RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0363p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TERESA TYSINGER,

*Plaintiff-Appellant,*

*v.*

No. 05-3785

POLICE DEPARTMENT OF THE CITY OF ZANESVILLE,
*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 01-01210—George C. Smith, District Judge.

Argued: June 9, 2006

Decided and Filed: September 25, 2006

Before: MARTIN, NORRIS, and McKEAGUE, Circuit Judges.

---

**COUNSEL**

**ARGUED:** F. Benjamin Riek III, Cleveland, Ohio, for Appellant. Christopher R. Walsh, EARL, WARBURTON, ADAMS & DAVIS, Columbus, Ohio, for Appellee. **ON BRIEF:** F. Benjamin Riek III, Cleveland, Ohio, for Appellant. Christopher R. Walsh, EARL, WARBURTON, ADAMS & DAVIS, Columbus, Ohio, for Appellee.

McKEAGUE, J., delivered the opinion of the court, in which NORRIS, J., joined. MARTIN, J. (pp. 11-13), delivered a separate dissenting opinion.

---

**OPINION**

---

McKEAGUE, Circuit Judge. Plaintiff-appellant Teresa Tysinger, a patrol officer and eight-year member of the City of Zanesville Police Department, brought suit against her employer alleging that she was subject to pregnancy discrimination, a form of sex discrimination, in violation of federal and Ohio law. After completion of discovery, the police department moved for and was granted summary judgment. The district court found that plaintiff had failed to make out a *prima facie* case. On due consideration, we affirm for the reasons that follow.

## I. BACKGROUND

Teresa Tysinger was hired by the City of Zanesville Police Department on September 8, 1992. She worked as a patrol officer. In August 2000, she became aware that she was pregnant.

Although she and her husband had one child prior to her employment with the Zanesville Police Department, this was her first pregnancy since becoming a police officer. Concerned that some of her duties, like "pushing vehicles and fighting with suspects," might endanger her unborn child, Tysinger raised her concern with her superiors almost immediately. Various alternative temporary assignments were discussed (*i.e.*, detective bureau processing of vehicles in impound lots, and assignment to a desk job answering phone calls), but no action was taken. In September 2000, after Tysinger had been in a physical altercation with a suspect, her doctor prescribed a work restriction, providing that "Teresa is to be on light duty during her pregnancy." When she presented this to Police Chief Eric Lambes, he advised her that there was no light duty position within the department and that she would have to be off work until she was able to return to full active duty.

Tysinger's leave of absence commenced on September 27, 2000. In October or November 2000, she learned that Detective Cameron Bryant planned to leave the detective bureau in January 2001, thereby creating an open position within her prescribed work restrictions. She advised Chief Lambes of her interest in the position when it became available, but nothing came of it. Tysinger later learned that the detective bureau had been over-staffed since July 2000, when Sergeant Richard Roush returned to the department from the prosecutor's office. Hence, when Bryant left, his duties were assumed by the existing staff in the detective bureau. Tysinger essentially concedes that Bryant's departure did not result in an opening in the detective bureau that needed to be filled. Tysinger dep. pp. 76-79, JA 175-76.

Tysinger gave birth on March 26, 2001, and returned to work in June 2001. On April 30, 2001, she filed a charge of discrimination with the Equal Employment Opportunity Commission and the Ohio Civil Rights Commission. Her EEOC right to sue letter was issued on September 18, 2001. Tysinger timely commenced this action by filing a two-count complaint. Count I asserts a claim for pregnancy discrimination under Title VII, 42 U.S.C. §§ 2000e-(2)(a)(1) and 2000e-(k). Count II sets forth a parallel pregnancy discrimination claim under Ohio law, R.C. §§ 4112.02(A), 4112.99. Essentially, Tysinger alleges that the Zanesville Police Department engaged in sex discrimination when it denied her accommodation of her pregnancy, despite having suitable positions available, and despite having granted accommodations to other similarly situated non-pregnant workers in the past.

The Zanesville Police Department moved for summary judgment on both federal and state pregnancy discrimination claims. The district court concluded that Tysinger had failed to make out a *prima facie* case because she had failed to adduce evidence demonstrating that she had been subjected to disparate treatment because of her pregnancy. In addition, the court held that Tysinger had failed to rebut defendant's legitimate nondiscriminatory reason for its actions by showing it to be pretextual. The court thus awarded summary judgment to the police department on Tysinger's pregnancy discrimination claims.

However, insofar as Tysinger's complaint could be construed as setting forth federal and state sex discrimination claims *apart from* the alleged pregnancy discrimination, the complaint survived. Specifically, the district court determined that the complaint included allegations supportive of federal and state claims that Tysinger applied for and was rejected for an open position in the detective bureau because she is a woman. Defendant filed a second motion for summary judgment attacking the surviving claims. On May 2, 2005, the district court granted this motion as well, concluding, on closer inspection of the complaint, that Tysinger had not in fact alleged any sex discrimination claims apart from pregnancy discrimination.

On appeal, Tysinger challenges both rulings and presents two claims of error. She contends the district court erred (1) by failing to properly consider her evidence of similarly situated non-pregnant employees who received more favorable treatment; and (2) by dismissing her alternative sex discrimination claims as not having been properly pleaded.

## II. ANALYSIS

### A. Standard of Review

The court of appeals reviews *de novo* an order granting summary judgment. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Id*. Not just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a *genuine* issue of *material* fact. *Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2005). A dispute is "genuine" only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). A factual dispute concerns a "material" fact only if its resolution might affect the outcome of the suit under the governing substantive law. *Id*.

### B. Proper Defendant

We note at the outset that the named defendant in this action, the Police Department of the City of Zanesville, is not a juridical entity subject to suit under Ohio law. *See Crawford v. Zeitler*, 326 F.2d 119, 121 (6th Cir. 1964); *Johari v. City of Columbus Police Dep't*, 186 F. Supp. 2d 821, 825 (S.D. Ohio 2002); *Fenstermaker v. City of Dayton, Ohio*, 712 F. Supp. 639, 644 (S.D. Ohio 1988). The police department is a subdivision of a municipal corporation, the City of Zanesville, which is subject to suit. R.C. § 715.01. The City of Zanesville, Tysinger's actual employer, ought to have been the named defendant in this action. Yet, inasmuch as the issue has not been raised by either party or the lower court, and considering that adjudication by default is disfavored, we liberally construe the complaint as having been brought against the City of Zanesville and proceed to consider the merits of Tysinger's claims.

### C. Pregnancy Discrimination

#### 1. *Prima Facie Case*

The federal and state pregnancy discrimination claims are evaluated generally under the same substantive standards. *See Kocak v. Cmty. Health Partners of Ohio,* Inc., 400 F.3d 466, 471-72 (6th Cir. 2005); *Cleveland v. Federal Express Corp.*, 83 F. App'x 74, 81 n.2 (6th Cir. 2003). Under the Pregnancy Discrimination Act provisions of Title VII, discrimination because of or on the basis of pregnancy, childbirth, or related medical conditions is defined as a kind of sex discrimination and is prohibited. 42 U.S.C. § 2000e(k). Women who are affected by pregnancy, childbirth or related medical conditions are required to be treated the same, for all employment purposes, as other persons not so affected but who are similar in their ability or inability to work. *Id*.

Plaintiff Teresa Tysinger's claims are not premised on direct evidence of pregnancy-based discriminatory animus. Therefore, her claims are subject to analysis under the evidentiary framework established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-03 (1973). *Prebilich-Holland v. Gaylord Entertainment Co.*, 297 F.3d 438, 442 (6th Cir. 2002). To sustain her claims, as a threshold matter, she must satisfy the elements of a *prima facie* case by showing that "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Id.* (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000)).

The district court concluded, viewing the evidence in the light most favorable to Tysinger, that triable fact issues were presented as to each of the first three elements. Regarding the second element, defendant City of Zanesville questions whether Tysinger was in fact "qualified" for her patrol officer position after she became pregnant. Although Tysinger had competently performed as a patrol officer for some eight years, defendant contends that she had ceased to be qualified to perform all the duties of the position, pursuant to her own physician's prescribed work restrictions, when she became pregnant. The question posed is whether a plaintiff's qualifications are assessed before or after the events or circumstances precipitating the complained of adverse action. For purposes of the *prima facie* case analysis, a plaintiff's qualifications are to be assessed in terms of whether he or she was meeting the employer's expectations prior to and independent of the events that led to the adverse action. *Cicero v. Borg-Warner Automotive,* Inc., 280 F.3d 579, 585 (6th Cir. 2002); *Cline*, 206 F.3d at 662-63. Prior to becoming pregnant, there is no dispute that Tysinger was meeting her employer's expectations. The second element of her *prima facie* case was therefore properly deemed satisfied.

Defendant City also contends, regarding the third element, that it did not impose any adverse employment action that precluded Tysinger from continuing work as a patrol officer. Defendant maintains that Tysinger's inability to continue working as a patrol officer was the direct result of actions taken by her, *i.e.*, becoming pregnant and presenting doctor-prescribed work restrictions which prohibited continuing work as a patrol officer. In support, defendant cites language from *Gray v. Toshiba America Consumer Products, Inc.*, 263 F.3d 595, 602 (6th Cir. 2001), to the effect that an employee who was discharged because of her own misconduct had failed even to establish a *prima facie* case. Defendant's reliance on *Gray* is misplaced. The cited reference in *Gray* does not relate to the third element, the adverse action element. In *Gray*, the plaintiff, who was discharged, was deemed to have satisfied the adverse action element of her *prima facie* case. *Id*. at 598. The court held rather that Gray failed to adduce evidence of a sex discrimination-based causal nexus to satisfy the fourth element of her *prima facie* case. *Id.* In *Gray*, as here, the real controversy involved the fourth element. Here, the district court correctly determined, for purposes of summary judgment analysis, that defendant, by denying Tysinger accommodating work within her restrictions and requiring her to take an extended leave of absence, partly without pay, subjected her to an adverse employment decision.

In order to satisfy the fourth element of her *prima facie* case, showing a causal nexus between her pregnancy and the denial of accommodation, Tysinger relies primarily on evidence of similarly situated non-pregnant employees who were granted more favorable treatment by defendant. Indeed, such "comparables" evidence may give rise to an inference that the pregnancy was the reason for the less favorable treatment – but only if the comparable employees were similarly situated "in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998). In relation specifically to a pregnancy discrimination claim, the "relevant respects" in which comparables must be similarly situated are their "ability or inability to work." *Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1226 (6th Cir. 1996) (citing 42 U.S.C. § 2000e(k)). Hence, to satisfy the fourth element, Tysinger is required to "demonstrate that another employee who was similar in her or his ability or inability to work received the benefits denied to her." *Id*.

Tysinger relies on the experiences of two male employees who sustained non-work related injuries that affected their ability to work. Officer Tom Landerman was a warrant officer, whose duties included those of a patrol officer, when he injured his quadriceps muscle in a non-work related accident. His physician ordered him not to work during the recovery period, but he continued working, even though he was not able to run and would not have been able to apprehend a suspect if required to. Though Chief Lambes was aware of the injury, Landerman did not advise him that his physician had ordered him off work and Lambes did not require him to take a leave of absence. A second comparable employee was Officer Jeff Madden. Madden was assigned to the detective bureau when he fractured a toe on his right foot while off-duty. He was off work for a

couple of days, but returned to work before he was fully recovered, when his ability to run and use physical force would have been limited, without advising Chief Lambes of any need for a restricted duty assignment. Plaintiff Tysinger contends that both officers were similarly situated to her in that both were temporarily unable to perform all the duties of their positions; yet neither of them was required to take a leave of absence.

Both Landerman and Madden were similarly situated to Tysinger in that they were temporarily unable to perform all the duties of their positions. In this respect, they satisfy the first half of the "comparables" requirement. But did they receive more favorable treatment than Tysinger? It is undisputed that they were not granted an accommodation in the form of light or restricted duties. This is the more favorable treatment that Tysinger requested and was denied. In this respect, Landerman and Madden did not receive more favorable treatment than Tysinger. There is no evidence that either officer received the accommodation that Tysinger claims to have been wrongfully denied.

In fact, there is no evidence that either officer sought an accommodation of any kind or even advised Chief Lambes that his physician had ordered him off work or prescribed restrictions. Despite their temporary inability to perform all the duties of their positions, they continued working in their usual assigned capacities. It is in this crucial respect that Landerman and Madden were *not* similarly situated to Tysinger. Despite their temporary infirmities, they presented themselves to their employer as willing and able to continue working in their ordinary capacities. Tysinger, on the other hand, distinguished herself by asserting the need for and requesting a temporary alteration in her job duties. In this respect, she sought from her employer not the same or equal treatment received by Landerman and Madden, but *more favorable* treatment. Chief Lambes affirmatively stated that Tysinger would have received the same treatment as Landerman and Madden, if she had elected to continue working as a patrol officer despite her pregnancy: "Had she been willing to perform full duty work, she would not have been removed from the active duty roster." Lambes aff. ¶ 4, JA 186.

On this record, the district court correctly concluded that "plaintiff has not proved that any other of defendant's non-pregnant employees similarly situated in their ability to work received any more favorable treatment so as to create a genuine issue of material fact." Opinion and Order, July 13, 2004, p. 12, JA 74. In the absence of such evidence, Tysinger was and is unable to satisfy the fourth element of her *prima facie* case of pregnancy discrimination. She failed to demonstrate a causal nexus between the adverse action she was subjected to and the fact that her infirmity was the result of pregnancy. Rather, the record demonstrates that she was required to take a leave of absence because she, in contrast to her non-pregnant colleagues, did not present herself to her employer as ready and able to perform all the duties of her position. She was in this crucial respect, in terms of "ability or inability to work," as viewed from the employer's perspective, not similarly situated to the asserted comparables. This difference undermines the asserted inference that her adverse treatment was the product of unlawful pregnancy discrimination.[1]

---

[1]The dissent views the record differently. In the name of viewing the evidence in the light most favorable to the nonmovant, the dissent conceives a factually unsupported scenario. The dissent correctly observes that Tysinger started a dialogue about alternative work assignments, but she did not continue it as the dissent imagines. When she presented doctor-prescribed work restrictions requiring a light duty assignment, Chief Lambes responded, consistent with City-wide policy, that no light duty assignment was available. There being no work available within the prescribed restrictions, he further advised that she would have to be off work until able to resume full duties.

In this, the Police Department is said to have "forced" Tysinger to take a leave of absence by denying her the choice to continue working, as had Landerman and Madden. Yet, Lambes's explanation that Tysinger would have been allowed to continue working if she had been willing to perform full duties – as had Landerman and Madden – stands unrefuted. There is no evidence that Tysinger wished or requested to continue working in her patrol officer position. If she had been willing and had communicated this to Lambes, this would have been a simple matter for her to substantiate by affidavit. And, if she had made this request and been denied, then, yes, her pregnancy discrimination

As the district court was careful to observe, the Pregnancy Discrimination Act does not require preferential treatment for pregnant employees. Rather, it mandates that employers treat pregnant employees *the same* as nonpregnant employees who are similarly situated with respect to their ability to work. *Ensley-Gaines*, 100 F.3d at 1226; *see also, Reeves v. Swift Transp. Co., Inc.*, 446 F.3d 637 (6th Cir. 2006) (rejecting just such a claim for preferential light duty treatment as beyond the mandates of the Pregnancy Discrimination Act). The Landerman and Madden evidence, rather than showing that Tysinger was subjected to less favorable treatment than they, instead shows that she received the same treatment – just what the Pregnancy Discrimination Act mandates.[2]

Accordingly, we conclude that the district court correctly determined that plaintiff Tysinger failed to make out a *prima facie* case of pregnancy discrimination.

### 2. *Pretext*

Assuming, *arguendo*, that Tysinger had established a *prima facie* case, the district court went on to conclude that defendant would nonetheless be entitled to summary judgment because Tysinger had failed to rebut defendant's legitimate nondiscriminatory reason for not granting her request for a restricted duty assignment by showing it to be a pretext for unlawful discrimination.

If a plaintiff successfully establishes her *prima facie* case of pregnancy discrimination, the burden of production shifts to the defendant employer to articulate a legitimate nondiscriminatory reason for its actions. *Cline*, 206 F.3d at 658. If the defendant fails to satisfy this burden, the plaintiff prevails. *Id.* If the defendant satisfies this burden, then the presumption of intentional discrimination arising from the *prima facie* case is negated, making it incumbent on the plaintiff to rebut the articulated reason by showing that it is not credible and is a mere pretext for discrimination. *Id.*

The City defended its decision not to grant Tysinger's request for a restricted duty assignment by demonstrating that it had no policy permitting light duty assignments for officers unable to perform all of their job duties. In fact, according to Chief Lambes, the City had a policy prohibiting assignment of police officers to light duty positions. Lambes aff. ¶¶ 3, 6, JA 186. The district court found this to be a legitimate nondiscriminatory reason for defendant's actions and Tysinger has not challenged this conclusion. She insists, however, that it is pretextual.

To carry her burden of demonstrating pretext, Tysinger must prove by a preponderance of the evidence that the given reason is not credible. *Cline*, 206 F.3d at 658.

A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. .... If a plaintiff can show that the defendant's proffered, nondiscriminatory reason is pretextual, the trier of fact may

---

claim would have been stronger. On this critical point, however, the record is silent.

The conclusion is thus inescapable that Tysinger chose not to continue working as a patrol officer. The notion that the Police Department denied her the choice and forced her to take a leave of absence simply finds no support in the record.

[2]Tysinger is not to be faulted for asserting her physician-prescribed need for restricted duty. In contrast to her colleagues, who, rightly or wrongly, "assumed the risk" that they would be able to handle the demands of their jobs despite their temporary leg infirmities, Tysinger had to exercise due regard for the health and well-being of another human being, her unborn child. This interest undeniably deserved and arguably even demanded *her* preferential treatment. However, the law, rightly or wrongly, does not extend this preferential obligation to the employer. A pregnant employee's employer is required only to afford equal treatment, not preferential treatment.

infer discrimination. ....   Nevertheless, the ultimate burden of proof to show discrimination remains on the plaintiff at all times.

*Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citations omitted); *see also Gray*, 263 F.3d at 600.  In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000), the Supreme Court recognized that although the plaintiff always retains the burden of proving intentional discrimination, evidence of the falsity of the employer's explanation, coupled with the elements of the plaintiff's *prima facie* case, *could* possibly, even without additional evidence of discrimination, justify an inference of discrimination. Whether the inference could be justified under such circumstances depends on a number of factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that may properly be considered on a motion for judgment as a matter of law."  *Id*. at 148-49.

Tysinger relies on the third method of rebutting defendant's reason.  *See Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (observing that the third method generally consists of evidence that other employees not in the protected class were treated more favorably).  Even though she presented no evidence refuting Chief Lambes's position that the City had a "policy of no light duty," Tysinger contends the policy was an insufficient reason because the experiences of Landerman and Madden demonstrate the existence of a *de facto* "modified duty policy."  As explained above, Landerman and Madden were not similarly situated to Tysinger in the relevant respect of ability to continue working in their normal capacities.  Neither did they receive the more favorable treatment sought by Tysinger, *i.e.*, an accommodating restricted duty assignment.  They simply continued working in their normal capacities despite their temporary physical infirmities, an option that was available to Tysinger as well, but not exercised by her.

Hence, Tysinger has not demonstrated the falsity of defendant's reason for not accommodating her condition.  Moreover, even if she were deemed to have called the sufficiency of the reason into question through the ill-fitting comparables evidence, her *prima facie* case of pregnancy discrimination, as explained above, is not so strong (in fact, it is incomplete) as to give rise to an inference of unlawful discrimination or even a "suspicion of mendacity."  *See Gray*, 263 F.3d at 600 (noting, in connection with the third method, that "whether the plaintiff has in fact presented evidence supporting each element of her prima facie case is material to the determination whether she has demonstrated that the employer's articulated reason .... is not credible.").  It follows that the Landerman and Madden evidence is ineffective to show pretext or even to create a genuine issue of material fact.  The district court did not err in its alternative basis for awarding summary judgment to defendant.

### 3. *Mixed Motive Analysis*

Alternatively, Tysinger argues that her claim ought to be analyzed as a "mixed motive" case. Citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), she argues that she need not prove pretext by a preponderance of the evidence, despite defendant's showing of a legitimate nondiscriminatory reason for its actions, if she has presented evidence showing that her pregnancy was also a motivating factor.  In such a "mixed motive" case, Tysinger contends, the *McDonnell Douglas* burden-allocation framework set forth above is not applicable; she need only present sufficient evidence to enable a reasonable trier of fact to conclude that pregnancy discrimination was *a* motivating factor.  She contends the existence of a mixed motive for defendant's actions is substantiated by evidence that Chief Lambes did not view pregnancy as a disability requiring accommodation.

First of all, *Desert Palace*, dealing with a jury instruction issue, does not purport to alter application of the *McDonnell Douglas* framework to pretrial analysis of discrimination claims based

on circumstantial evidence at the summary judgment stage. *See Desert Palace*, 539 U.S. at 99 (refusing to depart from conventional rules of civil litigation whereby a plaintiff must prove his or her case by a preponderance of the evidence using direct or circumstantial evidence); *Sallis v. University of Minnesota*, 408 F.3d 470, 475 (8th Cir. 2005) (expressly declining to read *Desert Palace* as modifying application of the *McDonnell Douglas* framework at pre-trial summary judgment stage). *But see, Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (holding that *Desert Palace* requires a slight modification of the pretext requirements of the *McDonnell Douglas* framework).

Secondly, whether the evidence is evaluated in terms of *prima facie* case elements, pretext requirements, or a mixed motive analysis apart from the *McDonnell Douglas* framework, it is abundantly clear, in any event, that plaintiff Tysinger bears the ultimate burden of demonstrating by a preponderance of the evidence that pregnancy discrimination was at least *a motivating* factor in the decision to deny her an accommodating restricted duty assignment. *Dews*, 231 F.3d at 1021 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). *See also, Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 286 (4th Cir. 2004) (en banc) (observing post-*Desert Palace* that regardless of the type of evidence offered, direct or circumstantial, and regardless of the theory asserted, single motive or mixed motive, the ultimate question remains the same: whether sufficient evidence has been produced to support a finding that the protected trait actually motivated the employer's adverse action). Under any of these constructs, Tysinger's evidence clearly falls short of creating a genuine issue of material fact.

Tysinger contends that Lambes's deposition testimony reveals that unlawful discrimination played a role in the defendant's decision. Contrary to Tysinger's characterization, however, Lambes's testimony does not suggest personal or institutional bias against pregnant employees. Lambes was asked whether the City of Zanesville considered an employee's pregnancy to be a condition that it would have to reasonably accommodate by assisting the pregnant employee in performing her duties insofar as the assistance did not unreasonably affect the City. Based on training he received at Northwestern University and consultation with the City's law department, Lambes responded that he did not believe pregnancy is a disability that the City was obliged to accommodate in this way. Lambes dep. pp. 71-72, 95-96, JA 145, 147.

Far from indicating unlawful discriminatory animus, this statement appears to be entirely consistent with the law. *See Gover v. Speedway Super America, LLC*, 245 F. Supp. 2d 695, 705 (S.D. Ohio 2002) (collecting cases recognizing that pregnancy, by itself, is not a disability within the meaning of the Americans with Disabilities Act); *Walker v. Fred Nesbit Distrib. Co.*, 331 F. Supp. 2d 780, 789 (S.D. Iowa 2004) (same); *Farrell v. Time Service, Inc.*, 178 F. Supp. 2d 1295, 1298 (N.D. Ga. 2001) (same). Lambes's deposition testimony does not, therefore, support Tysinger's theory that Lambes harbored an anti-pregnancy bias that motivated or even influenced the City's decision. Hence, Tysinger, like the plaintiff in *Reeves v. Swift Transp.*, 446 F.3d at 642, has failed even to adduce evidence substantiating the existence of a "mixed motive."

Moreover, even if Lambes's testimony were construed as potentially revealing a personal bias, such bias could hardly have been a motivating factor in denying Tysinger's request. It is undisputed that the decision to deny Tysinger a restricted duty assignment was consistent with the City's policy prohibiting light duty assignments, a policy even Chief Lambes had no authority to alter or circumvent. Lambes aff. ¶¶ 3,6, JA 186. It follows that any personal bias Lambes may have had, unsubstantiated on the present record, could not have been a motivating factor, but would have been, at worst, merely redundant of the impact of the City's controlling and legitimate nondiscriminatory policy. Furthermore, as outlined above, the decision to treat Tysinger the same as, and not more favorably than, other employees temporarily unable to perform all their duties was entirely consistent with the requirements of the Pregnancy Discrimination Act.

However viewed, the record evidence is insufficient to create a genuine issue of material fact. Summary judgment was properly awarded to defendant on Tysinger's pregnancy discrimination claims.

### D. Sex Discrimination

When the district court awarded summary judgment to defendant on the pregnancy discrimination claims, it recognized that Tysinger may have asserted other pregnancy-unrelated sex discrimination claims, and expressly declined to rule on them. Specifically, the court viewed the complaint as possibly alleging that Tysinger had, during her leave of absence, applied for an open position in the detective bureau and been passed over in favor of a less senior male applicant. Ruling on defendant's second motion for summary judgment attacking any such claims, the district court reconsidered its initial assessment of the complaint and concluded that Tysinger had not alleged sex discrimination apart from the alleged pregnancy-related discrimination. The court therefore granted the second motion for summary judgment and dismissed Tysinger's putative sex discrimination claims with prejudice.

In challenging this ruling, Tysinger does not take issue with the district court's holding that she had not alleged any claim of sex discrimination apart from pregnancy discrimination. Rather, she argues that her pregnancy discrimination allegations ought to have been evaluated both as pregnancy discrimination and sex discrimination claims.

First of all, the district court's reconsidered reading of Tysinger's complaint is more accurate and reasonable than its original, overly generous construction. The complaint contains two counts, each alleging "pregnancy discrimination, a form of sex discrimination" under federal law and Ohio law, respectively. There simply are no allegations of sex discrimination apart from pregnancy discrimination. The district court correctly concluded that Tysinger's allegations regarding defendant's refusal to grant her a position in the detective bureau or a position processing impound lot vehicles were included as support for her claims that defendant wrongfully failed to accommodate her pregnancy, not to substantiate separate sex discrimination claims.

To the extent Tysinger argues that pregnancy discrimination claims, on the one hand, and other types of sex discrimination claims, on the other, are evaluated under two different standards, she is wrong. This court recently reiterated that the *McDonnell Douglas* burden-allocation framework applies to pregnancy discrimination claims just as it does to other Title VII discrimination claims. *Reeves*, 446 F.3d at 641. Part of this analysis has been slightly modified or clarified for pregnancy discrimination claims, per *Ensley-Gaines*, 100 F.3d 1224. However, *Ensley-Gaines* merely makes it clear that comparables evidence presented in support of a pregnancy discrimination claim must be evaluated in terms of whether the compared employees are similarly situated in their ability or inability to work. Only if the comparables are similarly situated in terms of the their ability or inability to work can any disparate treatment received give rise to an inference of pregnancy-based discrimination. Despite Tysinger's protests to the contrary, this factor *was* expressly and properly considered in the district court's analysis of Tysinger's pregnancy discrimination claims.

Finally, to the extent Tysinger argues the district court ought to have considered the merits of separate sex discrimination claims based on evidence that she applied for and was not granted a position in the detective bureau, her argument is similarly unavailing. First of all, a fair reading of the complaint reveals, as the district court ultimately concluded, that no such claims were pleaded. Second, the merits of any such claims are fatally undercut by Tysinger's own acknowledgment that the opening she applied for in the detective bureau was not an opening after all. That is, she acknowledged later learning that Cameron Bryant's departure from the detective bureau in January 2001 did not create an opening because the bureau had been over-staffed and Bryant's duties were

assumed by remaining staff.  The fact that Tysinger was passed over for a position that was not even open does not give rise to an inference of sex discrimination.  It follows that consideration of the merits of any such separate sex discrimination claim would not have altered the outcome. Defendant was properly granted summary judgment on all of plaintiff Tysinger's claims.

## III.  CONCLUSION

For the foregoing reasons, we find no error in the district court's judgment, which is hereby **AFFIRMED.**

———————————

**DISSENT**

———————————

BOYCE F. MARTIN, JR., Circuit Judge, dissenting. After reviewing the majority's opinion, I must respectfully dissent. Given the factual record in this case, summary judgment is improper and the case should be remanded back to the district court for further proceedings.

I.

Teresa Tysinger is an eight-year veteran of the City of Zanesville Police Department. Tysinger learned she was pregnant in August 2000. The next month, after Tysinger had an altercation with a suspect, her doctor recommended that she be on light duty during the pregnancy. When Tysinger subsequently informed Police Chief Eric Lambes of her doctor's recommendation, he told Tysinger that there were no light duty positions available and forced her to take a leave of absence until she could return to full active duty. In March 2001, Tysinger gave birth. She returned to work in June.

Perhaps the more important facts in this case involve two male employees who Tysinger claims were similarly situated to her and yet received more preferential treatment by the City and the Department. Officer Tom Landerman injured his quadricep muscle in a non-work related incident. Landerman's physician ordered him not to work while he recovered. He wore a metal brace on his leg for six weeks, which limited his movement significantly, but he continued to work at the Department. After the brace was removed, Landerman had a limp for an additional four weeks. He avoided telling Chief Lambes of his injury during the two weeks subsequent to receiving the injury. After a conversation with Lambes regarding the injury, Landerman was not ordered to stay home or forced into a leave of absence, but continued working throughout the entirety of the injury.

Detective Jeff Madden broke a toe on his right foot. After taking a few days off, his supervisor, Captain Miller, asked Madden to return to work despite his still having limited movement. Madden was not required to take a leave of absence despite his injury, but in fact was requested by his superior to work with the injury.

II.

This case comes before this Court at the summary judgment stage. We review a granting of summary judgment de novo. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). "In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In this case, the non-moving party is Tysinger, and therefore all evidence should be viewed in the light most favorable to her.

"[W]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). As the majority states, a prima facie case of pregnancy discrimination is established by showing (1) plaintiff was pregnant; (2) plaintiff was qualified for the position; (3) plaintiff suffered an adverse employment action; and (4) there is a nexus between her pregnancy and the adverse employment action. Maj. Opn. at 3-4.

I agree with the majority that Tysinger has demonstrated the first three elements of a prima facie case of pregnancy discrimination. Specifically, I agree with the majority's determination that

the adverse employment action by the City of Zanesville was twofold "by denying Tysinger accommodating work within her restrictions *and* requiring her to take an extended leave of absence." Maj. Opn. at 4 (emphasis added). I also partially agree with the majority's conclusion that Tysinger has failed to demonstrate that she was treated differently than her similarly situated male counterparts to the extent that she was not granted light work duty. Neither Officer Landerman nor Detective Madden requested or was granted lighter work. What they were allowed to do, however, was continue working despite clear medical infirmities which limited the ability to do their jobs. This difference in treatment causes me to part ways with the majority's reasoning.

The heart of Tysinger's claim is that she was treated differently from Landerman and Madden. Both men experienced a physically debilitating injury which rendered them physically incapable of completing the tasks required of them in their job descriptions. Yet when their superiors were made explicitly aware of the injuries and the effect those injuries would have on their performances, they were allowed to continue working and "suck it up," "tough it out," or "grin and bear it" – whichever masculine catch-phrase you wish to apply. In contrast, Tysinger was not given the "suck it up" option. When Tysinger approached Chief Lambes and made him aware of her condition that would limit her ability to complete her physical duties, Lambes forced her to take a leave of absence. She was not given the opportunity to "tough it out." The reason, taking the facts in the light most favorable to Tysinger, is quite clear: Tysinger was pregnant. The Zanesville Police Department has thus instituted two standards for its employees: employees unable to complete their physical duties due to a condition other than pregnancy may continue working through their limitation, while pregnant employees are forced to take a leave of absence. I believe that this different treatment of similarly situated individuals demonstrates a clear nexus between the forced leave of absence and Tysinger's pregnancy and, therefore, would find that she has fulfilled the fourth element of her prima facie case.

The majority attempts to limit this with a quote from Lambes's affidavit, in which he stated "[h]ad she been willing to perform full duty work, she would not have been removed from the active duty roster." Maj. Opn. at 5. However, it was clear that the forced leave of absence was not Tysinger's choice. As the majority opinion states, Lambes told Tysinger "she would *have* to be off work until she was able to return to full active duty," Maj. Opn. at 2 (emphasis added), and Lambes "requir[ed] her to take an extended leave of absence," Maj. Opn. at 4. This was not a case in which Tysinger demanded either light duty *or* a leave of absence. Instead, Tysinger told Lambes about the pregnancy and requested light duty. That request was denied, and she was then forced to take a leave of absence. On the other hand, when Landerman and Madden found themselves in a similar situation to that of Tysinger, they were not forced to take a leave.

The majority believes that Madden and Landerman did not receive more favorable treatment than Tysinger because "[i]t is undisputed that they were not granted an accommodation in the form of light or restricted duties." Maj. Opn. at 5. This analysis completely ignores the more severe adverse employment action taken in Tysinger's case – namely, the leave of absence that the Police Department forced her to take. While the two men were allowed to continue working despite their infirmities, Tysinger was forced out of her job. That Tysinger told Chief Lambes that she was pregnant and requested light duty does not change the fact that she was still similarly situated to both Landerman and Madden. Both Landerman and Madden's superiors knew that they were injured and incapable of completely fulfilling their job duties, yet both were allowed to continue working.

The majority holds that Tysinger, by requesting light work, "did not present herself to her employer as ready and able to perform all the duties of her position" and was, therefore, different from Madden and Landerman. Maj. Opn. at 5. However, this is no different than the condition in which the City found those two men. The superiors of both men knew, either implicitly or explicitly, that because of their injuries, they were not "ready and able to perform all the duties" of their respective positions. Officer Landerman walked around his workplace with a metal brace for

six weeks and a limp for four weeks after that. In addition, Chief Lambes was made explicitly aware of the injury within two weeks after Landerman was injured, when the two men discussed the injury and how it would affect Landerman's job performance. As for Officer Madden, Captain Miller knew he was injured because Madden was taking time off due to his broken toe, at which point Miller called Madden and asked him to come back to work despite the physically-limiting injury. Just because Madden and Landerman failed explicitly to request light duty does not change the fact that their superiors were aware of their limitations and silently agreed with the two employees to ignore those limitations and have them "bear with it."

Tysinger has introduced evidence that when Lambes was made aware of Tysinger's pregnancy, he forced her into a leave of absence, requiring Tysinger to use her sick days until she could return to full, active duty. According to Tysinger's deposition, Chief Lambes "told me I was done until I got a slip saying I could return to full, active duty." At a minimum, the record is unclear as to whether Lambes intended to force Tysinger into using her sick days, thus presenting an issue of material fact on this point. Given the facts of this case and all inferences in favor of Tysinger, summary judgment in favor of the City of Zanesville was not proper. *See Bennett*, 410 F.3d at 817 (holding that in reviewing a summary judgment motion, "the evidence should be viewed in the light most favorable to the non-moving party"). In the eyes of Chief Lambes, Tysinger "was done" until she was no longer pregnant.

The majority believes that Tysinger was asking for more favorable treatment than Landerman and Madden when she requested to continue working after telling Chief Lambes of her pregnancy. Quite to the contrary, she was not requesting more favorable treatment, but only the same treatment. Tysinger should have had the same opportunity that the similarly-situated men had – namely, upon her superiors learning of a condition which limited her ability to perform her duties, she should have been allowed to keep working. Title VII states that pregnant women "shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). In this case, similarly-situated men were allowed to decide for themselves whether or not to keep working despite their physical limitations. Looking at the facts in the light most favorable to Tysinger, she was not given that choice, but instead was forced to take a leave of absence.

By approaching her superior and starting a dialogue about alternative work assignments to fit her physical needs, Tysinger attempted to do what was prudent for her own well-being. Chief Lambes took this request as grounds to force her into a leave of absence. In contrast, Madden and Landerman also made their superiors aware of their physical limitations and yet were allowed the choice to continue working. As to its male police officers, the City of Zanesville appears to be pro-choice. As to the pregnant Tysinger, the City took her choice away. This is disparate treatment by the City based exclusively on Tysinger's pregnancy and it appears to have violated Title VII. [1] I would not grant summary judgment for the City and would remand the case for further proceedings.

### III.

For the foregoing reasons, I respectfully dissent from the majority opinion.

---

[1] Because the City has offered no legitimate nondiscriminatory reason for forcing Tysinger to take a leave of absence, the burden-shifting enumerated in *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000), would not lead to the dismissal of Tysinger's claim. *See* Maj. Opn. at 6-7.