**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0779n.06

No. 12-1988

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Aug 23, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ALEXIS YOUNGBERG, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| MICHAEL MCKEOUGH, JACK MCKEOUGH, the | ) | **O P I N I O N** |
| ESTATE OF ROBERT JACK JEROVSEK and | ) | |
| JACK L. JEROVSEK as personal representative of the | ) | |
| ESTATE OF ROBERT JACK JEROVSEK, | ) | |
| | ) | |
| *Defendants-Appellees*. | ) | |
| | ) | |

BEFORE:    COLE and DONALD, Circuit Judges; MARBLEY, District Judge.[*]

COLE, Circuit Judge.  This appeal arises out of a personal injury action after a watercraft

collision in 2009.  Jack McKeough took several friends out on his parents' Mastercraft wake boat

on Spring Lake in Michigan.  They met up with several other friends, including Alexis Youngberg

and Robby Jerovsek, who were riding a Sea-Doo personal watercraft, which Robby drove.  The

afternoon ended in tragedy when the Mastercraft ran over the back of the Sea-Doo, killing Robby

and severing Alexis Youngberg's leg.  Ms. Youngberg brought a personal injury suit in diversity

alleging negligence against Jack McKeough, his parents, and Jack Jerovsek ("Jerovsek"), Robby

Jerovsek's father, and personal representative of Robby's estate.  At trial, a jury awarded Ms.

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District
of Ohio, sitting by designation.

Youngberg $4.6 million for Jack's negligent driving. During the trial, however, the district court

dismissed her remaining claims pursuant to Defendant's motion for partial summary judgment and

judgment as a matter of law. *See* Fed. R. Civ. P. 56, 50. The dismissed claims included claims

against Jack's parents for negligent entrustment and supervision and a claim against Jerovsek for

Robby's negligence. Ms. Youngberg now appeals these judgments as well as various evidentiary

rulings. For the following reasons, we affirm the judgment of the district court.

I.

On the evening of September 5, 2009, then-fourteen-year-old Jack took four teenage friends

out on his parents' Mastercraft motorboat on Spring Lake with the permission of his father, Michael

McKeough. Before heading out, Jack and his friends met up with fifteen-year-old Robby Jerovsek,

sixteen-year-old Alexis Youngberg and twenty-three year-old Kaitlin Van Dam, at the McKeough's

boat dock. Robby drove a three-person Sea-Doo personal watercraft with Ms. Youngberg seated

directly behind him and Kaitlin seated on the back. The Sea-Doo was owned by Ms. Youngberg's

father Mark Youngberg. It was a sunny, clear day, the lake was calm, and there was little boat traffic

on the water.

After leaving the dock, Jack drove the MasterCraft at "full throttle," traveling at

approximately 50 miles per hour. The Sea-Doo initially drove at a similar speed, moving in excess

of 50 miles per hour. The speed limit on the lake was 55 miles per hour. Minutes later, the Sea-Doo

slowed to an idle speed of 5 miles per hour as the MasterCraft approached it from behind. Jack was

distracted by a catalogue behind him and averted his attention from the waters ahead of him. Jack

turned to face forward just in time to see his boat hit the Sea-Doo squarely in the stern and run over

the top of it. The MasterCraft did not slow down as it collided with the Sea-Doo. Robby was killed in the accident and Ms. Youngberg's left leg was severed below the knee.

In September 2010, Ms. Youngberg[1] filed an action in the United States District Court for the Western District of Michigan, alleging negligence on the part of Jack McKeough. She also alleged a cause of action against Michael McKeough, Jack's father, as the owner of the MasterCraft boat, based on a Michigan statute that makes a boat owner liable for any injury caused by the negligent operation of his or her boat. *See* Mich. Comp. Laws § 324.80157. The complaint additionally alleged that both of Jack's parents, Michael and Nina McKeough ("the McKeoughs"), were liable under Michigan law for negligent entrustment and negligent supervision of their son. Finally, Ms. Youngberg alleged a negligence claim against Jerovsek as the personal representative of Robby's estate. Ms. Youngberg's claims against Jerovsek were predicated on the theory that Robby's sudden slowing of the Sea-Doo violated several Inland Navigational Rules ("INR").

Jerovsek filed a cross-claim against Jack McKeough and his parents, a counter-claim against Ms. Youngberg and a third-party claim against Mark Youngberg.

Prior to trial, Jack admitted liability for negligent operation of the MasterCraft and Mr. McKeough admitted liability under Michigan law as owner of the MasterCraft. The district court granted the McKeoughs judgment as a matter of law on Ms. Youngberg's negligent entrustment and

---

[1]The case was originally filed by Janice Youngberg, as a personal representative of Alexis Youngberg, because Ms. Youngberg was a minor at the time the original complaint was filed. When Ms. Youngberg reached the age of eighteen, in 2011, the complaint was amended to reflect that she is the sole Plaintiff.

negligent supervision claims. The jury awarded Ms. Youngberg $4.6 million for Jack and Mr. McKeough's negligence.

The district court dismissed a number of Ms. Youngberg's claims against Jerovsek before trial. In particular, the court granted a cross-motion for partial summary judgment for Jerovsek, holding that Ms. Youngberg could not show that Robby was obligated to maintain his course and speed as a vessel being overtaken under INR 17(a)(1), 33 U.S.C. § 2017(a)(1); 33 C.F.R. § 83.17(a)(1). With regard to the claims presented to the jury, Jerovsek was found not liable.

Jerovsek's claims against Ms. Youngberg and her father were dismissed before trial. His cross-claim against Jack and the McKeoughs was resolved with a $6 million consent judgment.

Ms. Youngberg now brings a timely appeal on several grounds. She argues that: (1) the district court erred by granting partial summary judgment to Jerovsek; (2) the district court erred in granting judgment as a matter of law on her claims of negligent entrustment and negligent supervision against the McKeoughs; (3) the district court erred in excluding testimony relevant to the negligent entrustment and negligent supervision claims; and (4) the district court erred by excluding expert testimony on the negligent entrustment and negligent supervision claims. We address these claim in turn.

II.

Ms. Youngberg first argues that the district court erred by granting partial summary judgment to Jerovsek. The district court held that, as a matter of law, Ms. Youngberg could not show that Robby had violated INR 17(a)(1). We review an order granting summary judgment de novo. *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). Summary

judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, we view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Tysinger*, 463 F.3d at 572. A genuine dispute is one "based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Id*.

The INRs are federally established rules which "apply to all vessels upon the inland waters of the United States." 33 U.S.C. § 2001; 33 C.F.R. § 83.01(a); *see also Matheny v. Tenn. Valley Auth.*, 557 F.3d 311, 317 n.3 (6th Cir. 2009). We interpret the INRs according to the most reasonable and natural reading of the language. *See Gonzales v. Oregon*, 546 U.S. 243, 285 (2006) (interpreting a federal regulation according to the most "reasonable" and "natural" interpretation); *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008) ("The statutory-interpretation analysis begins by examining the language of the statute itself to determine if its meaning is plain." (internal quotation marks omitted)).[2]

INR 17(a) provides:

(a) Stand-on vessel to keep course and speed; action allowed when give-way vessel fails to take appropriate action.
> (1) Where one of two vessels is to keep out of the way, the other shall keep her course and speed.

---

[2]Prior to 2010, and at the time of the accident, the Inland Navigation Rules were codified as statutes. In May 2010, the statutes were repealed and became part of the Code of Federal Regulations. The text of the rules did not change. It is not clear if the pre-May 2010 statutory version or the post-May 2010 Federal Regulation version of the INR applies in this case. It does not impact our analysis here, however, because the plain language of INR 17(a)(1) is clear.

33 C.F.R. § 83.17(a); *see also* 33 U.S.C. § 2017(a). INR 13(a) provides that "any vessel overtaking any other shall keep out of the way of the vessel being overtaken." 33 U.S.C. § 2013(a); 33 C.F.R. § 83.13(a). Ms. Youngberg argues that Robby violated INR17(a)(1) by slowing the Sea-Doo, allowing it to be overtaken by the MasterCraft, and that this issue should have gone to the jury.

In response Jerovsek contends, and the district court held, that INR 17(a)(1) was not violated because Jack did not signal before overtaking the Sea-Doo. Under INR 34(c):

> (c) Overtaking situations. When in sight of one another:
> (1) A power-driven vessel intending to overtake another power-driven vessel shall indicate her intention by the following signals on her whistle: one short blast to mean "I intend to overtake you on your starboard side"; two short blasts to mean "I intend to overtake you on your port side"; and
> (2) The power-driven vessel about to be overtaken shall, if in agreement, sound a similar sound signal. If in doubt she shall sound the danger signal prescribed in paragraph (d).

33 U.S.C. § 2034(c); 33 C.F.R. § 83.34(c). Jerovsek argues that because a signal was never sounded, Robby's duty to maintain his course and speed as a vessel being overtaken never arose.

As a preliminary matter, most questions of fact have been resolved by the jury and therefore, the question before us on appeal is narrow. At trial, the jury found that Robby was not liable for not providing an adequate lookout, INR 5, 33 U.S.C. § 2005; 33 C.F.R. § 83.05; not liable for failing to maintain a safe speed under INR 6, 33 U.S.C. § 2006; 33 C.F.R. § 83.06; not liable for failing to determine if there was a risk of collision under INR 7, 33 U.S.C. § 2007; 33 C.F.R. § 83.07; and not liable for failing to take action to avoid collision, INR 8, 33 U.S.C. § 2008; 33 C.F.R. § 83.08. There is an unresolved issue of fact as to whether Robby knew that the MasterCraft was behind him, and for purposes of summary judgment, we view the facts in the light most favorable to Ms. Youngberg

as the non-moving party. *See Tysinger*, 463 F.3d at 572. Therefore, the question before us today is this: assuming Robby knew that the MasterCraft was behind him, was it a violation of INR 17(a)(1) for him to fail to maintain his speed?

As the district court noted, the Second Circuit has held that "it is only after the exchange of signals that the duty of the vessel ahead begins at all." *The Industry*, 29 F.2d 29, 30 (2d Cir. 1928). The Second Circuit went on to explain that this is the only reasonable interpretation of INR 17(a)(1):

> The vessel ahead is usually overtaken because she has less speed and cannot avoid it; the overtaking vessel may always slow down and keep astern. The rules provide for no signal by which the overtaken vessel may declare her purpose to change her course and speed, and, if she is bound to keep both, she is, as it were, frozen in her navigation from the moment that the risk of collision begins, merely because the overtaking vessel begins to overhaul her, something which it is not always easy to ascertain. Thus she may be compelled to abandon her intended destination, or to pass her berth, merely because the overtaking vessel insists upon passing. It is therefore fair to suppose that her consent is required, not alone because she may think the passing dangerous in any case, but also because she may need to change her course for her own purposes to which the interests of the overtaking vessel can hardly be considered equal. The latter should therefore be obliged to hold herself in check against unexpected changes of course, and be prepared to meet them, until by the consent of the vessel ahead she gets assurance that it is convenient for her to hold on.

*Id*. In other words, the overtaking vessel has the primary duty to avoid collision. The rules provide that the overtaking vessel must both "keep out of the way" and initiate the passing maneuver by sending the first signal. *See* 33 U.S.C. §§ 2013(a), 2034(c); 33 C.F.R. §§ 83.13(a), 83.34(c). Presumably, the overtaking vessel only proceeds to overtake after receiving a consent signal, as opposed to the "danger signal" (or no signal at all), from the overtaken vessel. It would be an absurd interpretation of INR 17(a)(1), then, to require the overtaken vessel to maintain her course and speed

before this communication has taken place, whenever she thinks there is a chance that she *might* possibly get passed.

Ms. Youngberg argues that because a reasonable juror could conclude that Robby knew or should have known that the MasterCraft was directly behind him, the above interpretation should not apply in this particular case. She cites to two district court cases from outside of this jurisdiction to support this proposition. *See The Pillar de Larringa*, 42 F.Supp. 648 (E.D. Pa. 1942); *The Osceola*, 30 F. 383 (D.C.N.Y. 1887). To the extent that these cases are not distinguishable we decline to follow them. A forward vessel may know of another vessel's location without being sure of her intentions — there is no reason to assume that she intends to pass. The INRs provide for a clear communication method — a series of signals — which create the duty to maintain course and speed. These signals obviate the need to guess another vessel's intentions. Therefore, Robby's knowledge of the MasterCraft's location was irrelevant.

Ms. Youngberg cites one Sixth Circuit opinion, *Robinson v. Detroit & C. Steam Co.*, 73 F. 883 (6th Cir. 1896), but it does little to advance her argument. In *Robinson*, while an overtaken vessel was found liable, the liability was not on the basis of failure to maintain course or speed under INR 17(a)(1), but instead on the fact that the vessel was not properly manned with a lookout. *Id*. at 892. The question of whether Robby had adequately provided a lookout under INR 5, 33 U.S.C. § 2005; 33 C.F.R. § 83.05, was submitted to the jury and Jerovsek was found not liable. Therefore, *Robinson* does not apply here and the district court did not err by granting partial summary judgment to Jerovsek.

III.

Ms. Youngberg next argues that the district court erred by granting judgment as a matter of law, under Federal Rule of Civil Procedure 50(a), to the McKeoughs on her negligent entrustment and negligent supervision claims. Neither this issue nor the two following evidentiary issues relating to Ms. Youngberg's claim against the McKeoughs were raised at oral argument. Accordingly, it appears that these claims have been abandoned. But even if they have not been abandoned, we affirm the judgment of the district court.

When reviewing a Rule 50(a) motion in diversity, this Court applies the law of the forum state. *See Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 466 (6th Cir. 2009). Michigan courts use the term "directed verdict" as opposed to "judgment as a matter of law." *Id*. "Orders granting a directed verdict are reviewed de novo by Michigan appellate courts, which also 'view[ ] the evidence and all legitimate inferences in the light most favorable to the nonmoving party.'" *Id*. (quoting *Elezovic v. Ford Motor Co*., 697 N.W.2d 851, 857 (Mich. 2005)). The motion may be granted only if, after viewing all of the evidence in the light most favorable to the non-moving party, "reasonable minds could not differ on any question of material fact." *Id*. (citing *Caldwell v. Fox*, 231 N.W.2d 46, 49 (Mich. 1975)).

To make out a claim for either negligent supervision or negligent entrustment under Michigan law, Ms. Youngberg must have submitted evidence to show that the McKeoughs could have or should have foreseen that Jack was likely to injure someone while driving the MasterCraft. *See Fredericks v. Gen. Motors Corp*., 311 N.W.2d 725, 727 (Mich. 1981) ("To sustain a cause of action for negligent entrustment a plaintiff must prove that defendant knew or should have known

of the unreasonable risk propensities of the entrustee."); *Muma v. Brown*, 148 N.W.2d 760, 764 (Mich. 1967) (holding that in order for parents to be liable for negligent supervision, some action of the parents must be the proximate cause of the specific tortious act of the child and the act must have been foreseeable to the parents). Because no evidence was presented to show that Jack was an unusually reckless teenager or that he demonstrated any propensity for negligence with his parents' boat or any other water craft which would have put the McKeoughs on notice, her claims fail.

Ms. Youngberg emphasizes Jack's involvement in "high-risk" sports, including skiing and wake surfing, unfamiliarity with the MasterCraft Owner's Manual and specific Michigan boating statutes, and an alleged lack of sufficient direction from the McKeoughs on safe operation of the boat. She also notes that the McKeoughs admitted at trial that they never read the Michigan Boater Safety Handbook or MasterCraft Owners' Manual with Jack. Even taken in the light most favorable to Ms. Youngberg, these facts are insufficient to have put the McKeoughs on notice that Jack was likely to cause injury to another person while driving the boat.

Other evidence elicited at trial demonstrated that Jack was a competent seaman. He had completed the Michigan Boater Safety Course and had spent hundreds of hours boating since he was a small child. (Trial Test., R.209, PageID#3133, 3192-93.) Second, he was in sailing school and raced sailboats every week in the summer, giving him significant experience with boating on the lake. (*Id.* at PageID#3189.) Third, while Ms. Youngberg relies on the McKeoughs's testimony admitting that they did not perform certain acts such as reading the Boater Safety Handbook to assert that Jack had received insufficient direction on boating from his parents, that same testimony indicates that Jack received many hours of boating instruction from his parents

including "safety quizzes" while out on the water.  (*Id*. at PageID#3193.)  The McKeoughs's failure to read an Owners' Manual or Boater Safety Handbook to their son is no more significant than a parent's failure to read the owner's manual of a car or the state driving laws to their child once they have completed drivers' education.  Finally, while Ms. Youngberg emphasizes Jacks's participation in high-risk sports, she has submitted no evidence that skiers or wake surfers are riskier, more reckless, or less competent boat drivers than any other individuals.  The district court did not err in granting judgment as a matter of law.

IV.

Ms. Youngberg additionally alleges that the district court erred in excluding the testimony of Mark Youngberg, her father.  In his deposition, Mark Youngberg testified to an incident which occurred prior to the September 5, 2009, accident when he became upset with Jack for driving the MasterCraft too close to Ms. Youngberg, who was then driving the Sea-Doo.  Mr. Youngberg furthermore testified that Jack always drove the MasterCraft too fast on the lake.  He clarified, however, that, in his opinion, the appropriate speed was twenty-five miles per hour below the speed limit.

"We review for abuse of discretion a district court's evidentiary rulings, including rulings on witness testimony . . . ." *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007).  It is an abuse of discretion "when the district court relies on clearly erroneous findings of fact, . . . improperly applies the law, or . . . employs an erroneous legal standard." *United States v. Lopez-Medina*, 461 F.3d 724, 741 (6th Cir. 2006) (internal quotation marks omitted) (alterations in original).  "This standard of review is deferential because a trial judge has broad discretion on evidentiary rulings." *Flagg v. City*

*of Detroit*, 715 F.3d 165, 175 (6th Cir. 2013) (internal quotation marks omitted).

Ms. Youngberg's primary argument is that this testimony should have been admissible to show that the McKeoughs had notice, or should have had notice, of Jack's negligent driving propensities for purposes of her negligent entrustment and negligent supervision claims. In order for Mr. Youngberg's testimony to be admissible, it must be relevant. *See* Fed. R. Evid. 402. To be relevant, the testimony must make it more or less probable that the McKeoughs could have foreseen the accident. *See* Fed. R. Evid. 401. Mr. Youngberg's testimony, however, lacks a key element: he did not testify that he or anyone else ever informed the McKeoughs of Jack's allegedly poor driving. There is no evidence that the McKeoughs were aware of Jack's behavior   and in fact their own testimony is evidence to the contrary. Without this element, Mr. Youngberg's testimony is not relevant to the negligent entrustment or negligent supervision claims. Furthermore, even if Mr. Youngberg's testimony that Jack drove "very fast all the time" could be taken to suggest the McKeoughs, at some point, should have seen Jack drive "very fast" themselves, and therefore should have been on notice, Mr. Youngberg admitted that "very fast" by his definition was still under the speed limit   not fast enough to put the McKeoughs on notice of any reckless or negligent driving habits.

## V.

Finally, Ms. Youngberg appeals the district court's grant of the McKeoughs's motion in limine to preclude expert testimony on the issues of negligent entrustment and negligent supervision. The district court held that the proposed expert testimony would not be helpful to the jury under Federal Rule of Evidence 702(a). We review the district court's decision to preclude expert

testimony for an abuse of discretion. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

Ms. Youngberg argues on appeal that "the conclusion reached by the district court is simply wrong. [P]laintiff would merely be presenting [expert] evidence on two elements of a negligence claim that are the subject of expert opinion in innumerable Michigan cases    the applicable standard of care and the defendants' breach of that standard of care." However, she neither cites case law in support of her statement nor makes clear what the district court's exact errors were. It is not clear from the record who Ms. Youngberg's proposed expert is or exactly what expertise the intended expert would have offered. For all of our lack of information, Ms. Youngberg has been clear that the expert testimony would have pertained to whether the McKeoughs were negligent for letting Jack drive the boat. This is enough information to find that the expert testimony would not be helpful to the jury under Rule 702(a), and to affirm the district court on the same grounds that it excluded the testimony.

Helpful opinions do not "merely tell the jury what result to reach." *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1272 (6th Cir. 1988) (quoting Fed. R. Evid. 704 advisory committee's note (1972 Proposed Rules)). It is not helpful to the jury when expert testimony gives lay testimony interpreting the facts of the case or "address[ing] matters that [are] equally within the competence of the jurors to understand and decide." *Id.* The district court held that:

> [e]xpert testimony may very well be helpful to jurors in understanding the handling characteristics of the MasterCraft X-80, the strength, skills, experience and maturity necessary to safely operate it, and to explain performance differences between a standard ski boat and the more powerful MasterCraft X-80. However, the Court disagrees with [the] contention that expert testimony "will of necessity" require an expression of opinion on whether Jack McKeough should have been permitted to operate the MasterCraft. The experts will be able to give testimony on the technical

issues without addressing the adequacy of supervision and entrustment. The jury will be able to make a determination on this ultimate issue without the assistance of the experts' opinions.

A jury is competent to determine whether or not parents were negligent in their supervision of a child by allowing him to drive a boat. Therefore, it is not an appropriate subject for expert testimony under Rule 702(a).

VI.

For the foregoing reasons, we affirm the judgment of the district court.