**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a1047n.06

No. 12-2408

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
***Dec 23, 2013***
DEBORAH S. HUNT, Clerk

|                                        |     |                              |
| -------------------------------------- | --- | ---------------------------- |
| JENNIFER LATOWSKI,                     | )   |                              |
|                                        | )   |                              |
| **Plaintiff-Appellant,**               | )   |                              |
|                                        | )   |                              |
| v.                                     | )   | ON APPEAL FROM THE           |
|                                        | )   | UNITED STATES DISTRICT       |
| NORTHWOODS NURSING CENTER,             | )   | COURT FOR THE EASTERN        |
|                                        | )   | DISTRICT OF MICHIGAN         |
| **Defendant-Appellee.**                | )   |                              |
|                                        | )   |                              |

**O P I N I O N**

Before:  MOORE and McKEAGUE, Circuit Judges, and HELMICK, District Judge.[*]

**KAREN NELSON MOORE, Circuit Judge.**  This case stems from the termination of

Jennifer Latowski, a certified nursing assistant ("CNA"), after her physician imposed a lifting

restriction during her pregnancy.  Latowski alleged violations of Title VII of the Civil Rights Act

of 1991 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C.

§ 2000e, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., the Family and

Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, and related state claims.  She argued that her

employer, Northwoods Nursing Center ("North Woods"), discriminated against her by requiring her

to obtain a doctor's note stating she had no work restrictions when it learned she was pregnant and

terminating her when her doctor imposed a restriction.  The district court granted summary judgment

---

[*]The Honorable Jeffrey J. Helmick, United States District Judge for the Northern District of
Ohio, sitting by designation.

in favor of North Woods. We find sufficient evidence that North Woods discriminated against Latowski on the basis of her pregnancy, and therefore we **REVERSE** the district court's grant of summary judgment as to Latowski's pregnancy discrimination claims. We find no evidence that North Woods discriminated on another basis or otherwise interfered with her statutory rights, and therefore we **AFFIRM** the district court's grant of summary judgment as to Latowski's disability discrimination and FMLA interference claims.

## I. BACKGROUND

In July 2007, Latowski accepted a job as a CNA at North Woods. Latowski assisted nursing home residents with daily living activities, such as showering, dressing, eating, drinking, and ambulating, and provided companionship. Throughout her employment with North Woods, Latowski passed four essential functions tests, including one administered on September 9, 2008. Nothing in the record suggests that she performed her duties less than competently.

During the summer of 2008, Latowski became pregnant. After North Woods became aware of her pregnancy on September 26, 2008, ward clerk Maurine Roberts requested that Latowski obtain a doctor's note stating that she had no employment restrictions pursuant to North Woods' policy that employees get a note whenever North Woods learned of "anything medical." R. 29-4 (Roberts Dep. at 7) (Page ID #258). Latowski contacted her doctor and requested a note confirming that she had no restrictions. She continued to work her regularly scheduled shifts until October 1, when her doctor faxed a note to North Woods stating "only restriction no lifting over #50." R. 32-15 (Doctor's Note) (Page ID #410); R. 32-18 (EEOC Charge) (Page ID #428–35). After receiving the

note, Judy Doyle, Direct of Health Care Services, informed Latowski that she could no longer work because North Woods would accommodate only restrictions resulting from work-related incidents. R. 32-18 (EEOC Charge) (Page ID #432). Doyle explained that North Woods could be "liable if something happened to [Latowski's] baby." R. 32-19 (Doyle Statement) (Page ID #440–41). Doyle informed Latowski that she could continue working if her doctor lifted the restrictions and encouraged her to speak to her doctor or seek a second opinion, but Doyle also opined that a doctor would not lift the restrictions because Latowski's past miscarriages likely made her pregnancy "high risk." *Id.*

When Latowski attempted to report for her scheduled shift on the evening of October 2, the on-duty nurse informed Latowski that she had "resigned" and escorted her off the premises. R. 32-18 (EEOC Charge) (Page ID #432–33). On October 15, Doyle contacted Latowski to explain FMLA eligibility. Latowski informed Doyle that she did not wish to use her FMLA leave during her second trimester because she would still be pregnant when her FMLA eligibility expired. Aaron Woods, the Administrator of North Woods, accepted Latowski's "resignation" as of October 17 in a letter explaining that North Woods would "not accommodate a non-work related restriction." R. 32-20 (Woods Letter) (Page ID #444).

On November 12, 2008, Latowski filed her EEOC charge. While she was at North Woods to pick up her personnel records, Woods and Rick Ackerman, North Woods' co-owner and manager, met with Latowski and again discussed FMLA leave with her. During this discussion, Woods and Ackerman posed hypotheticals as to what might happen later in Latowski's pregnancy and

3

commented that her "belly would be in the way." R. 32-2 (Latowski Dep. at 87, 120) (Page ID #340, 344).

On March 16, 2011, Latowski filed a pro se complaint in the United States District Court for the Eastern District of Michigan. After obtaining assistance of counsel, Latowski filed an amended complaint alleging pregnancy discrimination in violation of Title VII, the PDA, and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2202; disability discrimination in violation of the ADA and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws § 37.1202; and FMLA interference.[1] R. 17 (Am. Compl.) (Page ID #105–14).

On February 28, 2012, North Woods moved for summary judgment on all claims. A magistrate judge recommended granting summary judgment, R. 38 (Report and Recommendation at 17) (Page ID #547), and the district court adopted the Report and Recommendation. R. 40 (D. Ct. Op.) (Page ID #596-619). The district court reasoned that North Woods' policy was "pregnancy-blind" and that no evidence suggested that North Woods "harbored discriminatory animus towards Plaintiff's pregnancy." *Id.* at 13–14, 16–17 (Page ID #608–09, 611–12). The district court also concluded that, even "[d]rawing all reasonable factual inferences in Plaintiff's favor, she is not correct that a genuine issue of fact exists regarding a prima facie case of indirect pregnancy discrimination" because Latowski was not "qualified" pursuant to North Woods' pregnancy-blind policy barring employees with non-work related restrictions from continuing to work. *Id.* at 18–19

---

[1]Latowski also alleged breach of fiduciary duty under ERISA, but dropped the claim during summary judgment proceedings.

(Page ID #613–14). Furthermore, Latowksi could not show a causal nexus between her pregnancy and her termination because the male comparator she identified was not treated more favorably, having been given the same option to take FMLA leave. *Id.* at 15 (Page ID #610).

The district court also concluded that Latowski had not raised a genuine issue of fact regarding her claim for disability discrimination under the "regarded as" prong of the ADA because North Woods' actions were motivated by its neutral policy, not a perception that Latowski was disabled. *Id.* at 21 (Page ID #616). Finally, the district court concluded that Latowski's FMLA interference claim was unripe because she never sought to use her leave. *Id.* at 23 (Page ID #618). The district court adopted the magistrate judge's recommendations and granted North Woods' motion for summary judgment on all claims. *Id.*

## II. STANDARD OF REVIEW

We review de novo a district court's order granting summary judgment. *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the nonmoving party. A factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Tysinger*, 463 F.3d at 572 (internal citations omitted). We must view all facts and evidence, and draw all reasonable inferences, in favor of the nonmoving party. *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009).

### III.  PREGNANCY DISCRIMINATION

Latowski argues that North Woods discriminated against her on the basis of her pregnancy when it required her to obtain a doctor's note and then terminated her after her doctor imposed a lifting restriction.  Under Title VII, an employer may not "discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1). Discrimination "on the basis of sex" includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work."  42 U.S.C. § 2000e(k). At oral argument, Latowski conceded that North Woods' policy is facially nondiscriminatory.  Thus, we need not address whether she could have proved discrimination by using the policy as direct evidence of discriminatory motive.  However, pregnancy discrimination claims may also be analyzed using the same indirect evidence proof framework as other sex discrimination claims brought pursuant to Title VII.[2]  *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000).  Under the indirect evidence framework, the plaintiff first has the burden of proving a prima facie case of discrimination; if she is successful, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions; finally, the plaintiff has the opportunity to

---

[2]We analyze ELCRA claims under the same framework as Title VII claims.  *See Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 n.4 (6th Cir. 2003).  Therefore, Latowski's ELCRA claim rises or falls with her pregnancy discrimination claim.

prove that the proffered reason is pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). "On a motion for summary judgment, a district court considers whether there is a sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline*, 206 F.3d at 661. Latowski has provided sufficient evidence both to establish a prima facie case and to demonstrate that North Woods' policy of prohibiting any employees with restrictions from working is pretext for discrimination.

A plaintiff can establish a prima facie case of pregnancy discrimination by showing that "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Id.* at 658. The parties do not contest that Latowski has established the first and third elements of the prima facie case: she was pregnant and her termination was an adverse employment decision.

Despite the district court's conclusion to the contrary, Latowski has also established the second element of the prima facie case by demonstrating that she was qualified for her job. "For purposes of the *prima facie* case analysis, a plaintiff's qualifications are to be assessed in terms of whether he or she was meeting the employer's expectations prior to and independent of the events that led to the adverse action." *Tysinger*, 463 F.3d at 573. North Woods has not provided any evidence suggesting that Latowski's job performance was unsatisfactory before she became pregnant, and indeed she passed several "essential functions" tests administered by North Woods both before and after becoming pregnant.

Latowski also provided sufficient evidence to demonstrate a nexus between her pregnancy and her termination. A plaintiff can prove the fourth element of the prima facie case through comparison to "another employee who is similarly situated in her or his ability or inability to work [and] received more favorable benefits." *Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1226 (6th Cir. 1996). Latowski has presented evidence that North Woods treated other CNAs with similar lifting restrictions more favorably by assigning them to "light duty." R. 32-23 (Employee Comparison) (Page ID #453–55). Although these employees differed from Latowski because their medical conditions were work-related, they were similarly situated in their ability to work because they were placed under lifting restrictions of up to fifty pounds.[3] Therefore, Latowski has presented sufficient evidence to establish a prima facie case of pregnancy discrimination.

North Woods has responded with a legitimate, nondiscriminatory reason for removing Latowski from the work schedule and ultimately terminating her employment: North Woods utilizes an economics-based policy of refusing to accommodate restrictions arising from injuries incurred outside the workplace. Therefore, Latowski has the burden of proving that North Woods' policy is pretext for discrimination. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was

---

[3]Under the ordinary Title VII analysis, employees who were restricted because of work-related injuries would be inappropriate comparators because they are not similarly situated in all respects. However, the *Ensley-Gaines* court recognized that the PDA altered the Title VII analysis for pregnancy discrimination claims: "While Title VII generally requires that a plaintiff demonstrate that the employee who received more favorable treatment be similarly situated in all respects, the PDA requires only that the employee be similar in his or her ability or inability to work." 100 F.3d at 1226 (internal quotation marks and citation omitted).

insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Latowski asserts that North Woods' policy is so absurd that it could not have actually motivated the decision to terminate her employment.[4]

A policy is not necessarily pretext for discrimination merely because we find it ill-advised: "The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996). However, "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc); *see also In re Lewis*, 845 F.2d 624, 633 (6th Cir. 1988) ("The more questionable the employer's reason, the easier it will be for the jury to expose it as pretext."). A reasonable jury could easily conclude that North Woods' business decision—to implement a policy terminating otherwise qualified workers whose doctors imposed any restrictions arising from non-workplace

---

[4]Latowski also argues in passing that North Woods did not in fact consistently employ a no-restrictions policy because it discussed the possibility of accommodations with other pregnant employees: North Woods explained to Amanda J., another CNA, that it could not continue to allow her to work after she received a pregnancy-related lifting restriction because it could not "eliminate risk to [her] and residents while allowing [her] to perform the essential functions of [her] position," even with accommodations. R. 32-22 (Amanda J. Documents) (Page ID #450). However, North Woods discussed accommodations with Amanda J. in 2010, after it changed its policy to accommodate pregnancy-related restrictions in the same way that it accommodates work-related restrictions. Thus, the letter is not relevant to whether North Woods consistently applied its policy at the time Latowski became pregnant.

injuries, even if those restrictions do not limit the employees' ability to competently perform their jobs — is so lacking in merit as to be a pretext for discrimination.

In addition to exposing the absurd results of North Woods' policy, Latowski has identified several statements made by North Woods administrators that reveal discriminatory animus against pregnant women:

- When Latowski inquired as to why she had been removed from the work schedule, Doyle admonished Latowski that she "wouldn't want to lose [her] baby." R. 32-19 (Doyle Statement at 1) (Page ID #440).

- The next day, after Latowski asked for a copy of North Woods' policy, Doyle explained that North Woods "would be liable if something happened to her baby and we had allowed her to work against her doctor's advice." *Id.* at 2 (Page ID #441).

- When Latowski returned to North Woods after her termination to obtain a copy of her personnel file, Ackerman commented that CNAs might have to lift patients weighing in excess of 150 pounds, "which could have exceeded [Latowski's] safe lifting capacity and jeopardized her health or that of her unborn child." R. 32-21 (Woods Memo at 2) (Page ID #447).

- At the same meeting, Ackerman told Latowski that her "belly would be in the way, and that [she] was unable to perform [her] job functions because of the pregnancy." R. 32-2 (Latowski Dep. at 120) (Page ID #344).

- Doyle and Wells both explained that the policy of requiring a doctor's note from pregnant employees was motivated by the desire to "know that the employee is able to work safe for her and her child." R. 29-6 (Woods Dep. at 11–12) (Page ID #274); R. 32-4 (Doyle Dep. at 14) (Page ID #357).

North Woods argues that these comments are stray remarks that, when taken in context, are merely attempts to explain North Woods' policy. Appellee Br. at 23–24. To the contrary, the comments were made by persons in managerial positions and they are directly related to the decision to

terminate her employment. Thus, they are relevant to support an inference that the application of North Woods' policy was pretext for discrimination.

The comments identified by Latowski were all made by either the decision maker in Latowski's termination or a high-level North Woods manager. Doyle, after applying the no-restrictions policy, was the first North Woods administrator to make the decision to remove Latowski from the work schedule. And, though Ackerman and Woods did not participate directly in the decision to terminate Latowski's employment, they were "in a position to shape the attitudes, policies, and decisions" of other managers and employees as executives at North Woods. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998); *see also Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009) ("Discriminatory statements made by individuals occupying managerial positions can be particularly probative of a discriminatory workplace culture."); *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 546 (3d Cir. 1992) ("When a major company executive speaks, 'everybody listens' in the corporate hierarchy." (citation omitted)). Thus, there is at least a genuine issue of fact regarding whether Doyle, Ackerman, and Woods played a meaningful role in the decision to terminate Latowski's employment. *See Wells v. New Cherokee Corp.*, 58 F.3d 233, 238 (6th Cir. 1995).

These remarks are also substantively relevant to show discriminatory animus because they were made directly in relation to Latowski's termination. "[I]solated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of . . . discrimination." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993) (internal quotation

11

marks and citation omitted). However, the comments identified by Latowski are neither isolated nor ambiguous. Instead, they were made directly to Latowski and directly in relation to the decision to terminate her employment. *See Wohler v. Toledo Stamping & Mfg. Co.*, No. 96-4187, 1997 WL 603422, at *3 (6th Cir. Sept. 30, 1997) (finding employer comments relevant because they were directed at the employee during "a conversation specifically addressing the decisional process which led to [the employee's] discharge"). Indeed, Doyle's comments regarding the danger to Latowski's unborn baby were made during the discussion in which Latowski first learned that she had been terminated.[5] And the later comments by Woods and Ackerman, though made after the decision to terminate Latwoski had already been finalized, directly explained their reasons for maintaining the policy that mandated Latowski's termination. *See Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1331–32 (6th Cir. 1994) (concluding that a reasonable jury could have found pretext from employer comments that "were not made in the context of [the employee's] termination" because they "help[ed] to reveal [a supervisor's] state of mind and reflect a deep-rooted, ongoing pattern that is anything but isolated"). Furthermore, "we do not view each discriminatory remark in isolation, but are mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus." *Ercegovich*, 154 F.3d at 356. Taken together, the

---

[5]These comments are not rendered harmless because they were motivated by compassion or concern for Latowski and her unborn child's health. In *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, UAW v. Johnson Controls, Inc.*, 499 U.S. 187 (1991), the Supreme Court found policies motivated by such "fetal protection" justifications to be discriminatory. Thus, a company's "fear of prenatal injury, no matter how sincere," cannot justify discrimination against an employee who is capable of doing her job. *Id.* at 207.

comments made by various members of the North Woods administration raise the inference that North Woods' policy was merely pretext for discriminatory animus against pregnant women.

Latowski has provided sufficient evidence to prove a prima facie case and to demonstrate that North Woods' purported reason for terminating her employment was pretext for discrimination. We therefore reverse the district court's grant of summary judgment in favor of North Woods on Latowski's pregnancy discrimination claims and remand for further proceedings consistent with this opinion.

## IV. DISABILITY DISCRIMINATION

Latowski also argues that North Woods discriminated against her on the basis of a perceived disability. The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment."[6] 42 U.S.C. § 12112(a). A prima facie case of discrimination under the ADA requires the plaintiff to show that (1) she is disabled, (2) she is otherwise qualified for the job, with or without reasonable accommodation, and (3) she was discriminated against because of her disability. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008). A person is "disabled" under the ADA if she has "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . . ; (B) a

---

[6]Michigan's PWDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012). On the facts presented in this case, there is no reason that Latowski's discrimination claim should fare differently under the state law; therefore, her PWDCRA and ADA claims rise and fall together.

record of such an impairment; or (C) [is] regarded as having such an impairment." § 12102(1). An individual is "regarded as" disabled if an employer "mistakenly believes that an employee has a physical impairment that substantially limits one or more major life activities or . . . mistakenly believes that an actual, nonlimiting impairment substantially limits one or more of an employee's major life activities." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 704 (6th Cir. 2008) (quoting *Sutton v. United Air Lines*, 527 U.S. 471, 489 (1999)). "The regarded-as-disabled prong of the ADA 'protects employees who are perfectly able to perform a job, but are rejected because of the myths, fears and stereotypes associated with disabilities.'" *Id.* at 703 (quoting *Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008)).

Because pregnancy is not a disability under the ADA, North Woods' belief that Latowski was pregnant cannot support her "regarded as" claim. *See Spees v. James Marine, Inc.*, 617 F.3d 380, 396 (6th Cir. 2010). However, "a potentially higher risk of having a future miscarriage[] could constitute an impairment" on which to base a "regarded as" claim. *Id.* Nonetheless, Latowski is unable to prove that North Woods regarded her as disabled because she has provided no evidence that any North Woods employee believed she was unusually susceptible to miscarrying. As evidence that she was regarded as disabled, Latowski relies on Doyle's assertion that a doctor was unlikely to remove lifting restrictions if he considered Latowski's pregnancy to be "high risk." R. 32-19 (Doyle Statement) (Page ID #440–41). This statement, when read in context, merely shows that Doyle was guessing, based on the information Latowski provided to her, why a physician might have imposed restrictions on Latowski and whether those restrictions might be lifted. *Cf. Spees*, 617

14

F.3d at 396 (concluding that an employer regarded a pregnant employee who had experienced complications during prior pregnancies as disabled because the employer expressed concern about her working and *directed her* to obtain a doctor's note limiting her to light duty work). They do not establish that Doyle herself, or any other North Woods administrator, considered Latowski susceptible to miscarriages.

Latowski has not presented evidence that North Woods regarded her as disabled, and thus she cannot establish the first element of the prima facie case. Therefore, we affirm the district court's grant of summary judgment to North Woods on the disability discrimination claims.

## V. FMLA INTERFERENCE

Finally, Latowski argues that she was terminated in violation of her FMLA rights. "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). A plaintiff may establish a prima facie case of FMLA interference by showing five elements: (1) she was an eligible employee, (2) the defendant was a covered employer under the FMLA, (3) she was entitled to leave, (4) she gave notice of her intent to take leave, and (5) the employer denied her FMLA benefits to which she was entitled. *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005). An employer denies an employee FMLA benefits when it "forces an employee to take FMLA leave when the employee does not have a 'serious health condition' that precludes her from working." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 449 (6th Cir. 2007). However, a claim made on this basis "ripens only when and if the employee seeks FMLA leave at a later date, and such leave is not available

15

because the employee was wrongfully forced to use FMLA leave in the past." *Id.* Latowski was terminated, at the latest, on October 17, 2008, *see* R. 32-20 (Termination Ltr.) (Page ID #444), and she was therefore no longer employed in early 2009, at the time she would have taken FMLA leave for the birth of her son. Because Latowski never sought to take FMLA leave in 2009, her claim never ripened and she cannot prove a prima facie case of FMLA interference. Therefore, we affirm the district court's grant of summary judgment in favor of North Woods on the FMLA interference claim.

## VI.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment to North Woods on Latowski's pregnancy discrimination claims and **AFFIRM** the district court's grant of summary judgment on Latowski's disability discrimination and FMLA interference claims.