### ROSHONG v. AMERICAN SAW & TOOL CO., Inc.

Court of Appeals of Kentucky.

Dec. 14, 1951.

Rehearing Denied Feb. 1, 1952.

Robert L. Sloss, Edgar A. Zingman, and Wyatt, Grafton & Grafton, all of Louisville, for appellant.

Robert E. Hatton, Louisville, for appellee.

WADDILL, Commissioner.

This action was instituted by appellant, Roy G. Roshong, for a declaration of rights under his contract of employment with appellee, American Saw & Tool Company (hereinafter called American).

Appellant contends that he is entitled to receive compensation for services rendered appellee in 1950 under the provisions of a contract entered into by the parties on January 18, 1949, while appellee claims that the contract was for an indefinite period, therefore it could be, and was modified by an agreement of the parties made April 13, 1950, that was retroactive to January 1, 1950.

The contract of January 18, 1949, provides in substance: (1) Appellee agrees to pay appellant $10,000 per year base salary and in addition thereto, on March 15, of each year, 5% of the gross profits before federal income taxes of the earnings of the company during the previous year, the earnings figure to be taken from the annual audited statement of the company; (2) in the event appellant becomes an employee of American not later than March 1, 1949, the bonus provision would be calculated as of February 1, 1949, in consideration of advice and help appellant was to render; (3) in the event American elects to cancel the agreement it would provide appellant with 90 "days" notice and allow him full participation of salary for a 90-day period, plus

bonus for any completed portion of the fiscal year at the time of notice, the bonus to be calculated on a percentage of the time employed in the calendar year, and (4) in the event appellant elects to leave the employment of American at a time prior to declaration of bonus, the bonus portion of the agreement is automatically cancelled.

On March 1, 1949, appellant began performing his duties for American on a "full time" basis and soon thereafter he was made a director and vice-president in charge of production. For his services during 1949, he received $14,425.32 in accordance with his contract.

Lee B. Thomas, President of American, testified that he and his family owned all of its stock; that W. E. Cowley and J. G. Beam were directors and vice-presidents and that they and appellant were the only employees of American who participated in its earnings on a percentage basis. Thomas stated that prior to April 13, 1950, he had several conferences with appellant, Cowley and Beam concerning adjustments to be made in their bonus agreements and in the operation of American during 1950; that Beam was assigned the task of preparing a new bonus arrangement that would be more equitable to American and which would also include the sales manager upon the same bonus terms as the vice-presidents of American. Thomas stated that a final meeting was held on April 13, 1950 during which the proposed change in the bonus agreements was presented. A part of his testimony upon this point is as follows:

"32. At this meeting of April 13, 1950, which you referred to as the final meeting was the proposed change in percentages mentioned? A. It was gone into in complete detail because I was getting ready to leave and I wanted to get it straightened out, and Mr. Beam had prepared a set of percentages. I had him take care of that, to do all the work on it because I felt that if he would do it, it would be more equitable because he was one of the parties who was going to receive a part of this bonus and I didn't want to be put in the position of driving down the necks of these people. I didn't want to be in the position of passing on to these people a change in agreement they were not completely concurring in, and, therefore, Mr. Beam being the treasurer of the company and knowing all about the financial details of the company, I felt was the man that should bear the job of getting this prepared and he did.

"33. Now the percentages that he prepared are those percentages which appear in the undated letter? A. Correct.

"34. And calls for the three persons Messrs. Beam, Cowley and Roshong to share equally in 15% of the first $100,000, 10½% of the next $100,000 and 6% on all in excess of $200,000? A. That's correct.

"37. Did you poll the individuals to find out whether or not this proposal was satisfactory? A. I did.

"38. What was the poll? A. It is my custom when we have an important decision to make, and certainly one as important as that, to see that we have complete and 100% agreement on every decision that is made, and I turned to each one of these people in turn, Mr. Beam, Mr. Cowley and Mr. Roshong, and I said, 'is this arrangement satisfactory to you?' Each one of them in turn said yes.

"39. And that arrangement was the arrangement that I have just read. A. That's right.

"40. Subsequent to that time was the bonus intended to include the sales manager Mr. Pallette? A. Yes, it was.

"41. Did Mr. Pallette participate for the year 1950 on the same basis as Mr. Cowley? A. Exactly as the other three men."

On cross-examination the following questions and answers appear:

"132. Well, you testified that you didn't want to force this thing down anybody's throat? A. That's right.

"133. So you let Mr. Beam work it out? A. That's right.

"134. Then you didn't put it up to each of these fellows on a take or leave it basis? A. At the final meeting I said 'This is the way it is going to be.'"

Thomas stated that on April 14, 1950, he sent appellants, Cowley and Beam a letter

under the caption, "Subject: Compensation for 1950," advising that the compensation American was paying them was "unsound" and that he was cancelling all outstanding agreements. The letter contained a bonus plan that American proposed paying in 1950, which contained the same terms that Thomas had presented to them in the meeting of April 13, 1950.

Thomas said that he thought the matter was settled and left on a trip; that in September he told appellant his work was unsatisfactory and in December, terminated his employment. Thomas's evidence is substantiated by the testimony of Beam and Cowley, who also testified that they agreed to and accepted the changes made on April 13th in their bonus compensation for 1950.

Appellant relies upon his 1949 contract. He acknowledges having received the letter from Thomas, but claims that he did not agree to accept the suggested changes in his compensation.

The court held that the original contract of employment was for an indefinite period of time and therefore could be modified or rescinded at any time in the manner provided by its terms. Judgment was entered allowing appellant a recovery under the contract of January 18, 1949, from January 1, 1950, to April 14, 1950. It was further decreed that appellant recover for the remainder of the year under the agreement of April 13, 1950.

The decisions are in conflict as to the question of the duration of an employment contract which specifies no continuance in time, but merely mentions the rate of compensation to be paid. Some cases follow the so-called English rule that a general hiring is for one year and others follow the so-called American rule that an indefinite hiring is terminable at will. Putnam v. Producers Live Stock Marketing Ass'n, 256 Ky. 196, 75 S.W.2d 1075, 100 A.L.R., page 834. While the parties have devoted many pages in their brief to a discussion of this question, we think the controlling issue is whether the parties entered into a new contract by their agreement of April 13, 1950. Their right to make a new agreement cannot successfully be questioned. In view of the evidence we are impelled to hold that a new agreement was entered into by their mutual consent. 56 C.J.S., Master and Servant, § 9, page 79; Restatement of the Law, Contracts, section 407, page 768.

Appellant held a position of trust and was a member of the group of officers that participated in the meetings where the new 1950 agreement was discussed and approved. Since the new contract was in force as of April 13, 1950, appellant cannot rely upon his inaction upon the communication from Thomas to claim a recovery upon the 1949 contract for services rendered after April 14, 1950. The letter was a memorial of the oral agreement. By his silence and acquiescence appellant assented to the language of Thomas's letter as correctly expressing the terms of the prior oral agreement.

Inasmuch as the judgment does not hold the agreement of April 13, 1950 retroactive, we are of the opinion that it is correct.

Judgment affirmed.