RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KENNETH BISIG, et al.,

　　　　*Plaintiffs-Appellants/Cross-Appellees*,

*v.*

TIME WARNER CABLE, INC.,

　　　　*Defendant-Appellee/Cross-Appellant*.

Nos. 18-5421/5483

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:14-cv-00036—David J. Hale, District Judge.

Argued:  January 16, 2019

Decided and Filed:  October 4, 2019

Before:  MERRITT, GIBBONS, and NALBANDIAN, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Victor B. Maddox, FULTZ MADDOX DICKENS PLC, Louisville, Kentucky, for Appellants/Cross-Appellees.  C. Celeste Creswell, KABAT CHAPMAN & OZMER LLP, Atlanta, Georgia, for Appellee/Cross-Appellant.  **ON BRIEF:**  Victor B. Maddox, FULTZ MADDOX DICKENS PLC, Louisville, Kentucky, Mary E. Eade, NEMES EADE PLLC, Louisville, Kentucky, for Appellants/Cross-Appellees.  C. Celeste Creswell, Joseph W. Ozmer II, KABAT CHAPMAN & OZMER LLP, Atlanta, Georgia, Todd B. Logsdon, Megan R. U'Sellis, Raymond C. Haley, FISHER & PHILLIPS LLP, Louisville, Kentucky, for Appellee/Cross-Appellant.

———————————

**OPINION**

———————————

NALBANDIAN, Circuit Judge.  This case is about promises made, promises broken, and disclaimers signed. And it is a reminder that not every broken promise occasions a legal remedy.

Plaintiffs[1] sued Time Warner after it allegedly failed to make good on oral promises of continued employment and better pay.   The problem for Plaintiffs is that these promises conflicted with written disclaimers that each had signed.[2] Through these disclaimers, Plaintiffs acknowledged they were at-will employees and would remain so unless they entered into written employment agreements.  Plaintiffs now appeal the district court's grant of summary judgment to Time Warner on their claims of fraud, negligent misrepresentation, and promissory estoppel. Time Warner cross-appeals the district court's order sanctioning it under Rule 37(c)(1) for its untimely production of documents.

We affirm the grant of summary judgment and reverse the sanctions.

I.

Plaintiffs first worked as "multi-dwelling unit" sales representatives ("MDU Reps") for Insight Communications, Inc., a provider of cable, internet, and phone services.  In that role, Plaintiffs sold Insight's services to apartment and condominium complexes in Louisville, Kentucky.  It was a privileged role.  All other sales representatives were "single-dwelling unit" sales representative ("SDU Reps").  Unlike MDU Reps, SDU Reps had to split their time going door-to-door, selling Insight's services to individual homeowners.  These clients were less lucrative for Insight, which generally paid SDU Reps less than MDU Reps.

---

[1]"Plaintiffs" are Kenneth Bisig, Daniel Carter, John Doyle, Rebekah Fisher, Jason James, Thomas Kandul, John Kincade, Mark Lopez, Chris Rigsby, and Michael Sheets.

[2]Technically, Plaintiffs "electronically acknowledged" these disclaimers.  (*See* R. 142-2, Beth Bennett Aff. at PageID #4450–51 ¶¶ 6–8.)  But no one disputes that these acknowledgments are the functional equivalent of signatures.

But change was coming. In 2011, Time Warner announced it was acquiring Insight. Plaintiffs claim that Time Warner induced them to stay in their jobs even though troubling developments at the company would have otherwise caused them to leave. Among these developments were the "elimination of numerous jobs and whole departments," increased market competition, and customer service issues. (Pls.' Opening Br. at 3–4.) According to Plaintiffs, Time Warner promised them that they would keep their positions and receive better pay (or at least not less pay) while working for Time Warner.

Time Warner acquired Insight in March 2012, and it allegedly reiterated its promises to Plaintiffs at various meetings it held with them the next year. So Plaintiffs claim they were shocked to learn in October 2013 that their workforce was being cut in half and that they would need to reapply if they wished to keep their positions. Those who could not keep their positions would be offered jobs as "Sweep Representatives," which Plaintiffs regarded as an inferior, less well-paid position. Plaintiffs allege that Time Warner knew these changes would occur, even while it promised Plaintiffs better pay and continued employment.

Time Warner challenges this narrative by pointing out that it made no changes to Plaintiffs' employment or compensation plan for more than eighteen months after the acquisition. It also notes that Plaintiffs electronically acknowledged and accepted three different at-will employment disclaimers on or before the acquisition date. And it paints a very different picture of what it told Plaintiffs during the meetings it held with them the next year.

According to Time Warner, it informed Plaintiffs at these meetings that they could lose their jobs and that their compensation could decrease. At a meeting in August 2013, for example, Time Warner provided each Plaintiff a copy of a compensation plan that overhauled how they would earn commission going forward. The plan caused some Plaintiffs to complain that they would make less money and that Time Warner would need to reduce the number of MDU Reps. The plan also contained an at-will disclaimer that reminded Plaintiffs of their at-will status and cautioned that the plan "in no way implie[d] or guarantee[d] continued employment." (*See* R. 143-3, Commission Plan at PageID #4865.)

Plaintiffs each eventually quit working for Time Warner after it told them that they would need to reapply to keep their positions.  They later filed this lawsuit, alleging that Time Warner had unlawfully broken its promises of better pay and continued employment. Their first amended complaint asserted several claims, including fraud, negligent misrepresentation, and promissory estoppel.  Plaintiffs later moved for summary judgment on their promissory-estoppel claim, and Time Warner moved for summary judgment on all of Plaintiffs' claims.

Plaintiffs then filed a motion for sanctions.  Through that motion, Plaintiffs sought to exclude certain documents that, they argued, Time Warner had failed to timely disclose.  These documents were Plaintiffs' job offer letters.  And they included one of the three types of at-will disclaimers that Plaintiffs electronically acknowledged on or before the acquisition date. Plaintiffs also sought attorneys' fees and expenses as an alternative sanction.

Although the magistrate judge concluded that the disclosure was untimely, she denied Plaintiffs' motion because she found the belated disclosure harmless.  Plaintiffs filed objections to the magistrate judge's decision, and the district court sustained those objections.  As a remedy, the district court excluded the documents and awarded Plaintiffs their attorneys' fees and costs related to the sanctions motion.  Notwithstanding this order, the district court eventually granted Time Warner summary judgment on all of Plaintiffs' claims.

Plaintiffs now appeal the district court's grant of summary judgment to Time Warner on their claims of fraud, negligent misrepresentation, and promissory estoppel.  And Time Warner cross-appeals the court's sanctions order.

We first consider Plaintiffs' summary-judgment appeal, which we review de novo. *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006).  Under this standard, we construe all facts and reasonable inferences in Plaintiffs' favor.  *Id.*  If genuine issues of material facts remain, then summary judgment was improper.  *Id.*

II.

*Fraud and Negligent Misrepresentation.* The district court construed Plaintiffs' complaint as asserting both fraudulent misrepresentation and fraudulent omission.  And it

granted Time Warner summary judgment on these claims for the same reason it granted Time Warner summary judgment on Plaintiffs' negligent-misrepresentation claim: Plaintiffs had failed to establish that they "reasonably relied" on Time Warner's promises.

We agree with the parties and the district court that reasonable reliance is an element of both fraudulent and negligent misrepresentation in Kentucky. *See Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009); *Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 580 (Ky. 2004). But we are less certain that it is an element of fraudulent omission. We put that aside for now, however, and first explain why Plaintiffs cannot establish reasonable reliance and so their claims of negligent and fraudulent misrepresentation must fail.

In so doing, we rely on the same document that the district court relied on. It was one of the three documents that informed Plaintiffs of their at-will statuses on or before the acquisition date. And it was labeled an "Important Notice." (R. 142-2, Important Notices at PageID #4579–88.) It stated: "You will be employed on an at-will basis unless you are subject to a written employment agreement signed by a company representative authorized to enter into an employment agreement." *Id.*

Each Plaintiff electronically acknowledged "hav[ing] read and accepted the terms" of this notice. *Id.* And it is undisputed that Plaintiffs did so *before* they detrimentally relied on Time Warner's alleged promises of continued employment and better pay. So the issue here is whether it was *reasonable* for Plaintiffs to rely on Time Warner's promises of better pay and continued employment even though they had read and accepted this notice.

We hold it was not. On this issue, Kentucky law is clear: "[A]s a matter of law, a party may not rely on oral representations that conflict with written disclaimers to the contrary which the complaining party earlier specifically acknowledged in writing." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 640 (Ky. Ct. App. 2003).

The facts of *Rivermont* illustrate its rule (the "Rivermont Rule"). Rivermont Inn ("Rivermont") wished to buy a Holiday Inn from MD Investments ("MD"), but the franchise was not transferrable. *Id.* at 639. So Rivermont began negotiating with Holiday Inn's parent company ("Holiday") to obtain a franchise license. *Id.* During the application process,

Rivermont proposed a property-improvement plan costing $1.4 million that would involve substantial upgrades to the property. *Id.* Importantly, it also "acknowledged in writing several times that Holiday [did] not enter into oral agreements 'with respect to licenses or matters pertaining to the granting of a license.'" *Id.* "The documents further stated that Holiday 'reserve[d] the sole right to approve or disapprove the Application for any reason it [] determine[d].'" *Id.*

Three days before the scheduled closing, Rivermont contacted one of Holiday's vice presidents, Judy Bloodworth, and asked whether it should proceed with the closing. *Id.* According to Rivermont, "Bloodworth told them that licensing would be forthcoming and to close on the property." *Id.* So Rivermont went through with the closing. *Id.* After the closing, however, Holiday said it would only approve the franchise if Rivermont agreed to a condition: "[T]he hotel would not be on Holiday's national network until the [property-improvement plan] was completed to Holiday's satisfaction." *Id.* Rather than accept the condition, Rivermont sued Holiday, alleging fraud and promissory estoppel. *See id.* The trial court granted summary judgment to Holiday on each of Rivermont's claims, and the Kentucky Court of Appeals affirmed. *Id.* at 640, 643.

The Court of Appeals held that Rivermont's fraudulent misrepresentation claim failed for two reasons. First, it held that Rivermont could not establish fraudulent misrepresentation based on all the facts that Rivermont knew before it went through with the closing. *Id.* at 640. This included the fact that Holiday did not enter into oral agreements about licensing matters as specified in the written disclaimers. *Id.* For its second reason, the court articulated what we now refer to as the Rivermont Rule. Again, that rule prohibits a party from "rely[ing] on oral representations that conflict with written disclaimers to the contrary which the [] party earlier specifically acknowledged in writing." *Id.* And the court held that the rule barred Rivermont from relying on Bloodworth's oral representations as a matter of law. *Id.*

Here, all the Plaintiffs electronically acknowledged the Important Notice. The only question that remains is whether the Important Notice "conflict[ed]" with Time Warner's oral representations of continued employment and better pay. *Id.* We have no doubt that it did.

In Kentucky, at-will employees may be discharged "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983) (citing *Scroghan v. Kraftco Corp.*, 551 S.W.2d 811 (Ky. Ct. App. 1977); *Production Oil Co. v. Johnson*, 313 S.W.2d 411 (Ky. Ct. App. 1958)). Only "a narrow public policy exception" applies to this rule: An employee may not be fired "when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law." *Id.* No such policy is implicated here. As a result, Time Warner's promises of continued employment directly conflicted with this disclaimer.

Plaintiffs' reliance on Time Warner's promises of better pay fares no better. Kentucky law permits an employer to unilaterally modify the terms and conditions of an at-will employment relationship, prospectively, upon reasonable notice to the employee. *See Landrum v. Lindsey Wilson Coll.*, No. 2003-CA-000971-MR, 2004 WL 362317, at *3 (Ky. Ct. App. Feb. 27, 2004) (unpublished) (citing *Roshong v. American Saw & Tool Co., Inc.*, 244 S.W.2d 974 (Ky. 1951); *Meyers v. Brown–Forman Distillery Co.*, 158 S.W.2d 407 (Ky. 1942)); *see also Kimmel v. Progress Paint Mfg. Co.*, No. 2002-CA-000273-MR, 2003 WL 1226837, at *4 (Ky. Ct. App. Jan. 10, 2003) (unpublished). So the Important Notice informed each Plaintiff that Time Warner could unilaterally modify his or her future pay after giving reasonable notice. It follows that the company's oral promises of better or similar pay directly conflicted with this disclaimer.

A useful illustration of the Rivermont Rule applied to the at-will employment context appears in *Turner v. Leggett & Platt, Inc.*, No. 5:08-CV-00113-TBR, 2010 WL 1049849 (W.D. Ky. Mar. 19, 2010). There, the employer had promised the employee a "long career" and that he would have a job until his division was sold. *Id.* at *1–2. But the company discharged the employee before it sold the division. *Id.* at *3. The employee sued, alleging fraud, promissory estoppel, and other claims. *Id.* But the court applied the Rivermont Rule and held that the employee could not rely on those representations because they conflicted with written, at-will disclaimers that he had signed. *See id.* at *7.

None of the cases that Plaintiffs substantially rely on are to the contrary. In their opening brief, Plaintiffs assert that these cases provide the "substantive rule of decision in this case:"

*United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464 (Ky. 1999); *Brown v. Louisville Jefferson Cty. Redevelopment Auth., Inc.*, 310 S.W.3d 221 (Ky. Ct. App. 2010); and *Oliver v. J.J.B. Hilliard, W.L. Lyons, Inc.*, No. 2010-CA-001138-MR, 2013 WL 762593 (Ky. Ct. App. Mar. 1, 2013) (unpublished). (Pls.' Opening Br. at 44.) But those cases merely illustrate the uncontroversial principle that a plaintiff may sometimes establish reasonable reliance based on a defendant's oral representations. None of those cases involved a disclaimer—let alone a disclaimer that conflicted with those representations.

Switching strategies in their reply brief, Plaintiffs argue that disclaimers may be relevant but are never dispositive of reasonable reliance. But the case they rely on for that proposition contradicts their position. *See Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 262 (Ky. Ct. App. 2007). In *Radioshack*, the court held that the plaintiffs could not reasonably rely on the defendant's oral representations regarding a matter that was covered by the parties' franchise agreement. *Id.* This was because the parties' franchise agreement "specifically disclaimed any oral understandings or agreements which were not set out in the written contract." *Id.*

Similarly, here the Important Notices stated that Plaintiffs would be "employed on an at-will basis unless [they were] subject to a *written* employment agreement signed by a company representative authorized to enter into an employment agreement." (See R. 142-2, Important Notices at PageID #4579–88 (emphasis added).) In other words, the Important Notices "specifically disclaimed any oral understanding or agreements" affecting Plaintiffs' at-will employment statuses. *Radioshack*, 222 S.W.3d at 262. Plaintiffs are thus barred from relying on such understandings or agreements to show reasonable reliance.

It is true that *Radioshack* also said that "written disclaimers do not preclude a tort action for misrepresentation." *Id.* But that is not inconsistent with the Rivermont Rule. *Rivermont* never said that written disclaimers preclude a misrepresentation claim per se. *Rivermont* held that a plaintiff may not establish reasonable reliance where the disclaimers *conflict* with subsequent oral representations. *Rivermont*, 113 S.W.3d at 640. Indeed, *Radioshack* cited *Rivermont* in holding that the defendant's oral promise was "not actionable" because, like the promises here, it conflicted with the parties' written agreement. *See Radioshack*, 222 S.W.3d at 262.

In light of the above, we hold that the Rivermont Rule prohibits Plaintiffs from establishing reasonable reliance based on Time Warner's oral promises of continued employment and better pay. And because Plaintiffs cannot establish reasonable reliance, their claims of fraudulent and negligent misrepresentation fail.

*Fraudulent Omission.* We return to the issue we set aside earlier: Whether reasonable reliance is an element of fraudulent omission under Kentucky law. If it is (as both parties assume), our analysis is straightforward given we have already held that Plaintiffs cannot establish reasonable reliance.

The Kentucky Court of Appeals has at times suggested that it is. *See Pal Oil, LLC v. United Am. Energy, LLC*, No. 2011-CA-000744-MR, 2012 WL 5274652, at *30 (Ky. Ct. App. Oct. 26, 2012) (unpublished) ("In the context of fraud, Kentucky law prohibits [the plaintiff] from claiming that it *reasonably relied* upon any oral representation *or supposed omission* that conflicts with [a written] disclaimer to the contrary which [the plaintiff] earlier specifically acknowledged in writing.") (emphasis added) (citing *Rivermont*, 113 S.W.3d at 640–41); *Martinez v. Bruner Land Co., Inc.*, No. 2014-CA-001312-MR, 2016 WL 6543626, at *6 (Ky. Ct. App. Nov. 4, 2016) (unpublished) (explaining that the "operative question" in a fraudulent-omission claim was "whether [the claimant] *reasonably relied* on the lack of [] undisclosed information to her detriment") (emphasis added).

But neither the Kentucky Supreme Court nor the Kentucky Court of Appeals has explicitly said that reasonable reliance is an element of fraudulent omission. Both courts define the elements of fraudulent omission as: "(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence." *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 45 n.27 (Ky. 2018) (quoting *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011)); *accord Rivermont*, 113 S.W.3d at 641.

And yet both courts *have* explicitly said that reasonable reliance *is* an element of fraudulent misrepresentation, which requires proof that:

> (1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff *reasonably relied* upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff.

*Giddings & Lewis*, 348 S.W.3d at 747 (emphasis added) (citing *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009)); *accord Rivermont*, 113 S.W.3d at 640.

The distinction appears to be academic.  If a defendant's failure to disclose a material fact induces the plaintiff's detrimental reliance, and the defendant owed the plaintiff a duty to disclose the material fact, the plaintiff's reliance may be characterized as reasonable.  But we must also be mindful of the Kentucky Supreme Court's statement that "[f]raud by omission is not the same, at law, as fraud by misrepresentation, and has substantially different elements." *Giddings & Lewis*, 348 S.W.3d at 747 (quoting *Rivermont*, 113 S.W.3d at 641).[3]

Regardless, it turns out not to affect the bottom line here.  In *Rivermont*, the disclaimers did not just prohibit Rivermont from relying on Holiday's oral representations.  The disclaimers also meant that Holiday did not have a *duty* to disclose that it intended to place a condition on its approval of Rivermont's franchise. *Rivermont*, 113 S.W.3d at 641–42.  The court reasoned that Holiday would have only owed Rivermont that duty if Holiday "ha[d] partially disclosed material facts to [Rivermont] but created the impression of full disclosure." *Id.* at 641 (citing *Dennis v. Thomson*, 43 S.W.2d 18 (Ky. 1931)).[4]  But Rivermont could not make that showing because of what it had acknowledged in writing—that Holiday would not "enter into oral agreements with respect to the granting of a license." *Id.*  Rivermont was thus unable to

---

[3]We recently reviewed the distinction between fraudulent omission and fraudulent misrepresentation in Kentucky tort law. *Helm v. Ratterman*, No. 17-6367, 2019 WL 2514766 (6th Cir. June 18, 2019).  In *Helm*, we suggested the "sole distinction" between fraudulent omission and fraudulent misrepresentation is the duty to disclose. *Id.* at *12.  But, to be fair, neither *Giddings & Lewis* nor *Helms* addresses the issue of reasonable reliance.

[4]The court held that the other ways of showing a duty to disclose material facts—based on statute or a fiduciary relationship—were not applicable there. *Rivermont*, 113 S.W.3d at 641.  They are not applicable here, either.

establish an essential element of its fraudulent-omission claim. *Id.* at 642; *see also Gidding & Lewis*, 348 S.W.3d at 747.

The same is true here. Plaintiffs had already acknowledged in writing that they were at-will employees when Time Warner promised them continued employment and better pay. As a result, they cannot show that Time Warner withheld "material facts [from them] but created the impression of full disclosure." *Id.* at 641. Their fraudulent-omission claim therefore fails.

*Promissory Estoppel.* We next consider Plaintiffs' promissory-estoppel claim, and we take this opportunity to clarify some confusion within our circuit. The district court "conclude[d] that reasonable reliance is not a required element of promissory estoppel" but granted summary judgment on other grounds. (R. 195, Summ. J. Op. and Order at PageID #6206.) The Plaintiffs likewise take the position that reasonable reliance is not an element of promissory estoppel. Although Time Warner argues that the better view of Kentucky law is that reasonable reliance *is* an element of the claim, it acknowledges that the issue is the subject of "some debate." (Time Warner's Resp. Br. at 44.) That is perhaps unsurprising considering we have stated, in dicta, that Kentucky law "is unsettled on this issue." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 472 (6th Cir. 2011).

*Ashland*'s dictum was based on *TWB Distribution, LLC v. BBL, Inc.*, No. 3:08-CV-509-S, 2009 WL 5103604 (W.D. Ky. Dec. 17, 2009). In *TWB Distribution*, the court surveyed Kentucky caselaw and observed that every court, Kentucky or federal, to squarely confront the issue had indicated that reasonable reliance was an essential element of promissory estoppel. *Id.* at *6 (citing *Rivermont*, 113 S.W.3d at 640–41; *Fletcher v. Branch Banking & Trust Corp.*, 2007 WL 2792186 (W.D. Ky. Sept. 21, 2007); *Butler v. Progressive Cas. Ins. Co.*, 2005 WL 1009621 (W.D. Ky. April 25, 2005)).

But the *TWB Distribution* court also noted that although the Kentucky Supreme Court had not directly confronted the issue, it had articulated the elements of promissory estoppel in two cases. *Id.* at *5. And both times it adopted the Restatement (Second) of Contracts' definition:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009) (quoting *Meade Const. Co. v. Mansfield Commercial Elec., Inc.*, 579 S.W.2d 105, 106 (Ky. 1979)); *accord* Restatement (Second) of Contracts § 90 (Am. Law Inst. 1981).

As the *TWB Distribution* court explained, the commentary of the Restatement advises that "the . . . requirement [that enforcement be necessary to avoid injustice] *may depend* on the reasonableness of the promisee's reliance." *TWB Distribution*, 2009 WL 5103604, at *5 (alterations in original and emphasis added) (quoting Restatement (Second) of Contracts § 90 cmt. b). The court took from that statement that reasonable reliance could be but was not necessarily an element of the Restatement definition. *Id.* For the court, it followed that reasonable reliance was not necessarily an element of promissory estoppel in Kentucky. *Id.*

But the court overlooked what was right in front of it. The Restatement definition itself requires the promise be "*reasonably* expect[ed] to induce action or forbearance on the part of the promisee." Restatement (Second) of Contracts § 90(1) (emphasis added). In other words, the promisee's reliance—the "action or forbearance"—must be "reasonabl[e]." *Id.* Reasonable reliance is therefore a stand-alone element of promissory estoppel under the Restatement definition.

That reading is supported by reams of authority. In fact, the Kentucky Court of Appeals has required proof of reasonable reliance in cases where it has applied the Restatement definition. *See McCarthy v. Louisville Cartage Co.*, 796 S.W.2d 10, 12 (Ky. Ct. App. 1990) (holding that an employer was not entitled to a directed verdict where "[t]he employer [could] reasonably foresee that [the employee's] continuation in employment ha[d] been induced"); *see also Hyatt Corp. of Delaware v. Young & Assocs., Inc.*, No. 2004-CA-002233-MR, 2005 WL 3004744, at *5 (Ky. Ct. App. Nov. 10, 2005) (unpublished).

Other state appellate courts in our Circuit have either explicitly or implicitly read the Restatement definition to require proof of reasonable reliance. *See, e.g.*, *State Bank of Standish v. Curry*, 500 N.W.2d 104, 107 (Mich. 1993) ("[T]he reliance interest protected by § 90 is *reasonable reliance*") (emphasis original); *Olympic Holding Co. v. ACE Ltd.*, 909 N.E.2d 93, 101 (Ohio 2009) (recognizing that Ohio has adopted the Restatement definition and stating that the claimant "must have relied on conduct of an adversary . . . and that reliance must have been reasonable"); *Rice v. NN, Inc. Ball & Roller Div.*, 210 S.W.3d 536, 544 (Tenn. Ct. App. 2006).

Our circuit and several of our sister circuits have done the same when applying the Restatement definition. *See, e.g.*, *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 503 (6th Cir. 2003) (construing Ohio law); *Kirklin v. Joshen Paper & Packaging of Arkansas Co.*, 911 F.3d 530, 537 (8th Cir. 2018) (construing Arkansas law); *Rockwood v. SKF USA Inc.*, 687 F.3d 1, 13 (1st Cir. 2012) (construing New Hampshire and Pennsylvania law); *Garwood Packaging, Inc. v. Allen & Co.*, 378 F.3d 698, 701 (7th Cir. 2004) (construing Indiana law).

And two classic treatises on contracts agree: Both acknowledge the enduring influence of the Restatement on the development of promissory estoppel under state common law. *See* 4 Samuel Williston & Richard A. Lord, Williston on Contracts § 8:5, at 101–17 (4th ed. 2008); 3 Eric Mils Holmes & Joseph M. Perillo, Corbin on Contracts § 8.10, at 35–38 (1996).[5] And both acknowledge that the Restatement definition requires proof of reasonable reliance. *See* Williston & Lord, *supra*, at 137–38 ("[B]oth versions of the Restatement recognize that . . . a promise might be enforced despite the absence of consideration . . . based on the promisee's foreseeable, reasonable, justified and detrimental reliance on the promise."); Holmes & Perillo, *supra* § 8.9, at 29 ("[The] 'promise' must reasonably be expected to and does in fact induce reasonable reliance.").

This is all to say that the Kentucky Supreme Court's adoption of the Restatement definition only *confirms* what every court to directly confront the issue has already indicated: Reasonable reliance is a "key element" of promissory estoppel in Kentucky. *Rivermont*,

---

[5]That is not surprising considering the special roles that the treatises' original authors played in the development of the first Restatement of Contracts, where section 90 made its debut. Williston served as Reporter for the Restatement while Corbin served as his chief adviser and eventually co-Reporter. Arthur L. Corbin, *Samuel Williston*, 76 Harv. L. Rev. 1327, 1327 (1963).

113 S.W. at 642.   And that means Plaintiffs' promissory-estoppel claim fails for the same reasons that their claims of negligent and fraudulent misrepresentation fail.[6]

For these reasons, we affirm the district court's grant of summary judgment to Time Warner.  Now we turn to Time Warner's cross-appeal.

III.

Time Warner argues that the district court abused its discretion in sustaining Plaintiffs' objections to the magistrate judge's sanctions order.  That order had denied Plaintiffs' sanctions motion, which sought to prevent Time Warner from introducing Plaintiffs' offer letters into evidence.  The offer letters were among the three types of documents containing an at-will disclaimer that Plaintiffs electronically acknowledged on or before the acquisition date.  Each document stated:

> Your employment with TWC is at-will, meaning either you or TWC can terminate employment, with or without prior notice, at any time for any reason not prohibited by law.  Nothing in this letter is intended to create a contract for employment, guarantee of continued employment with TWC, or guarantee of any particular compensation or benefit level.  This at-will relationship may not be modified except by individual written agreement signed by you and an officer of TWC.  TWC reserves the right to change the terms and conditions of your employment, with or without notice to you, at any time for any reason not prohibited by law.  This letter constitutes the full terms and conditions of your employment with TWC.  It supersedes any other oral or written promises that may have been made to you.

(*See, e.g.*, R. 153-1, Bisig Offer Letter at PageID #5521.)

Time Warner did not disclose these offer letters to Plaintiffs until nearly two and a half years into the litigation and two weeks before the close of discovery.  Naturally, Plaintiffs argued that Time Warner violated its duty to include these documents as part of its initial disclosures under Rule 26(a)(1).  They also argued that Time Warner violated Rule 26(e), which requires parties to—"in a timely manner"—"supplement or correct" initial disclosures that are "incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1), (e)(1)(A).  Accordingly, Plaintiffs moved to

---

[6]Because Plaintiffs' promissory-estoppel claim fails on the merits, we need not address Time Warner's argument that the claim is time barred under the applicable statute of limitations.

exclude the letters under Rule 37(c).  That Rule prohibits a party from using information it failed to timely produce under Rule 26(a) or (e) "unless the failure was substantially justified or [] harmless."  Fed. R. Civ. P. 37(c)(1).  It also authorizes the district court to order—"[i]n addition to or instead of" exclusion—the "payment of [] reasonable expenses, including attorney's fees," Fed. R. Civ. P. 37(c)(1), (c)(1)(A), which Plaintiffs sought as an alternative sanction.

In its defense, Time Warner argued that the production was not untimely under Rule 26(e) because it "immediately" produced the documents upon discovering them.  Time Warner claims that they had stored the offer letters in electronic archives filed separately from its personnel records and only discovered them in preparation for a deposition.  Alternatively, it argued that the disclosure was "substantially justified or [] harmless" under Rule 37(c)(1).

The magistrate judge denied Plaintiffs' request for sanctions.  Although the judge concluded that the disclosure was not timely, it also concluded that the disclosure was harmless.[7]

---

[7]Time Warner has abandoned on appeal its argument that its production was timely, but its argument nonetheless raises an interesting question.  The realities of modern litigation are such that even the most diligent parties may not produce all the information they are obligated to produce right away.  *See, e.g.*, David Kessler et al., *A Guide to Remedying Document Discovery Mishaps*, 44 LITIGATION 18, 22 (2018).  Rule 26(e)'s supplementation requirement recognizes this reality.  Still, the question remains: When, if ever, is a production that is "late" in regard to an initial obligation "timely" under Rule 26(e)?

In *EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783 (E.D. Tenn. 2016), the court suggested that a production is timely under Rule 26(e) so long as the information was disclosed before the close of discovery and within 30 days of discovering it.  *Id.* at 795. *See also Novak v. Capital Mgmt. & Dev. Corp.*, 241 F.R.D. 389, 391–92 (D.D.C. 2007) (concluding there was "no basis" to strike supplemental disclosures made forty-seven and thirty days before the close of discovery where there was no evidence of "gamesmanship").  This seems reasonable absent evidence of bad faith or gamesmanship.

The court in *Clearly Food & Beverage Co. v. Top Shelf Beverages, Inc.*, 2015 WL 1263339 (W.D. Wash. Mar. 18, 2015), took a different approach.  There, the court sanctioned the disclosing party even though it produced the information as soon as it was discovered.  *Id.* at *3.  It did so after finding that the information could have (and should have) been included in the party's initial disclosures had it conducted a "reasonable search."  *Id.*

Lastly, at least two courts have suggested that Rule 26(e) timeliness is a concept measured in relation to "the availability of the supplemental information."  *Hartford Fire Ins. v. Sambrano*, 440 B.R. 702, 710 (Bankr. W.D. Tex. 2010) (quoting *Dayton Valley Investors, LLC v. Union Pacific R.R. Co.*, No. 2:08-cv-00127-ECR-RJJ, 2010 WL 3829219, at *3 (D. Nev. Sept. 24, 2010)).  In this context, a supplement is untimely if it discloses information that was previously available.  *Id.*  And information is available unless it is "newly discovered or [] could not have been disclosed [by the original deadline.]"  *Dayton Valley Investors*, 2010 WL 3829219, at *4.  This means that information actually in the possession of the producing party or information "easily" obtained is deemed "available."  *Hartford Fire Ins.*, 440 B.R. at 710-11.

Finally, questions remain whether a party who can show that it was forced to conduct additional discovery as a result of a late production, whether "timely" or not, should bear the entire cost of that additional discovery.

In any event, Time Warner limits its challenge to the district court's imposition of sanctions under Rule 37(c).

Plaintiffs then filed objections to the magistrate judge's order with the district court. In that motion, Plaintiffs argued that the magistrate judge ignored this Court's five-factor test for determining harmlessness under *Howe v. City of Akron*, 801 F.3d 718 (6th Cir. 2015). The district court agreed with Plaintiffs, so it sustained their objections and excluded the letters. In addition, the court ordered Time Warner to pay Plaintiffs the reasonable attorneys' fees and costs related to Time Warner's discovery violation.

Time Warner advances five arguments on appeal for why, in its view, the district court abused its discretion: (1) The court improperly sustained Plaintiffs' objections to the magistrate judge's order based on arguments "not fairly presented to the magistrate judge"; (2) the court incorrectly concluded that the magistrate judge failed to apply *Howe*; (3) the court applied the wrong standard in reviewing the magistrate judge's decision; (4) the magistrate judge's decision was neither clearly erroneous nor contrary to law; and (5) the court improperly failed to make a "bad faith" finding before imposing monetary sanctions under its inherent power.

We disagree with Time Warner's first argument but agree with its next three arguments. And because we reverse the monetary sanctions on other grounds, we hold that its last argument is moot.

IV.

We review a district court's decision to impose Rule 37(c)(1) sanctions for an abuse of discretion. *Howe v. City of Akron*, 801 F.3d at 747. This includes a district court decision that itself reviews a magistrate judge's decision to impose Rule 37(c)(1) sanctions. *See EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 467 (6th Cir. 2019). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). "In other words, the reviewing court must determine that the lower court's action leaves it with 'a definite and firm conviction that the trial court committed a clear error of judgment.'" *Id.* (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

V.

*The Parties Presented* Howe *to the Magistrate Judge.* Time Warner first argues that the district court should not have considered Plaintiffs' objections because they never mentioned *Howe* in their motion for sanctions or reply. We disagree that Plaintiffs were under any obligation to do so.

In *Murr v. United States*, 200 F.3d 895 (6th Cir. 2000), we noted that parties are precluded from raising "new arguments or issues that were not presented to the magistrate." *Id.* at 902 n.1. But even a cursory review of the record confirms that such was not the case here. Although Plaintiffs did not explicitly mention *Howe* in their sanctions motion, they argued that Time Warner's violation was not harmless. And in responding to Plaintiffs' motion, Time Warner explicitly argued how each factor of *Howe* weighed in its favor. Plaintiffs' reply brief, in turn, responded to at least a few of Time Warner's *Howe*-based arguments. The record is thus clear that the parties fairly presented *Howe*'s test for harmlessness "to the magistrate." *Murr*, 200 F.3d at 902 n.1.

*The Magistrate Judge Applied Howe.* Time Warner next argues that the district court erred in concluding that the magistrate judge failed to apply *Howe*.

Under 28 U.S.C. § 636(b)(1)(A), a district court may "reconsider" a magistrate judge's decision on a non-dispositive, "non-excepted, pending pretrial matter" only if it is "clearly erroneous or contrary to law." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) (quoting 28 U.S.C. § 636(b)(1)(A)); *see also* Fed. R. Civ. P. 72(a) (implementing 28 U.S.C. § 636(b)(1)(A)). "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo." *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d. Cir. 2017) (emphasis omitted). "A [factual] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). And "[a]n order is 'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *United States v. Winsper*, No. 3:08-CV-631-H, 2013 WL 5673617, at *1 (W.D. Ky. Oct. 17, 2013) (quoting *Gresham v.*

*Corr. Med. Servs., Inc.*, No. 1:09-CV-392, 2010 WL 3385355, at *3 (W.D. Mich. Aug. 25, 2010)).

Thus, whether the magistrate judge failed to apply *Howe* is a legal question that the district court was required to review de novo.[8]  Although the district court appears to have done so, we disagree with its conclusion that the magistrate judge failed to apply *Howe*.

The five factors that we consider under *Howe* are:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)).

The magistrate judge considered nearly each of these factors, as we explain below. But first, a word of caution: "District courts have broad discretion in applying these factors and need not apply each one rigidly.  The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bentley v. Highlands Hosp. Corp.*, No. CV 15-97-ART-EBA, 2016 WL 5867496, at *10 (E.D. Ky. Oct. 6, 2016) (Thapar, J.) (quoting *Howe*, 801 F.3d at 747, 749  (internal citations omitted)); *see also Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 569 (6th Cir. 2016) (affirming the district court's judgment that untimely disclosures were "harmless" without strictly applying *Howe*).

Turning to *Howe*'s first factor—surprise to the party—the magistrate judge found that it weighed in Time Warner's favor.  The judge concluded that the disclosure did not surprise Plaintiffs because they had already received and acknowledged the offer letters during the onboarding process.  Time Warner had also produced screenshots of the onboarding process—

---

[8]So are we.  This is in keeping with the general rule that—even under abuse-of-discretion review—we ordinarily review the district court's factual findings for clear error and its legal conclusions de novo.  *See, e.g.*, *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019); *Perket v. Sec'y of Health & Human Servs.*, 905 F.2d 129, 132 (6th Cir. 1990).

which directly referenced the offer letters—nearly a year before its supplemental disclosure. And those screenshots "should have put the Plaintiffs and their counsel on immediate notice of the existence of the Offer Letters." (R. 168, Magis. Judge's Sanction's Order at PageID #5801.) Indeed, the judge suggested that it was precisely because Plaintiffs knew about these letters (and their damning contents) that they challenged their introduction.

The judge found that the second factor—ability to cure—also weighed in Time Warner's favor. He noted, for example, that Plaintiffs neither moved for additional discovery nor moved to extend the discovery deadline. Moreover, they "made no effort whatsoever to make use of these critical documents" during their deposition of Time Warner's corporate representative. *Id.* at 5802. And this was despite them receiving the documents—barely two pages per Plaintiff— roughly two weeks before that deposition.

The judge did not explicitly analyze the third factor—disruption to trial. He may have simply inferred from Plaintiffs' unwillingness to cure that there would be no disruption. After all, the parties had had not yet even scheduled trial. We do not find this omission to be fatal in any event because judges need not apply *Howe'*s factors "rigidly." *Bentley*, 2016 WL 5867496, at \*10.

As for the fourth factor—importance of the evidence—the magistrate judge found that the documents were "highly essential" and "on their face contain[ed] obviously critical employment terms." (R. 168, Magis. Judge's Sanction's Order at PageID #5795.) On its own, this factor can cut both ways. "The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150-JMH-REW, 2017 WL 2295906, at \*5 (E.D. Ky. May 25, 2017). But the judge appeared to weigh this factor in Time Warner's favor because Plaintiffs made no efforts to cure their surprise.

The judge found that the fifth and final factor—the non-disclosing party's explanation— favored Plaintiffs. The judge concluded that "[a] reasonable person simply could not accept that such critical documents were overlooked for so long." (R. 168, Magis. Judge's Sanction's Order at PageID #5800.)

In sum, the magistrate judge found that at least three of *Howe*'s five factors favored Time Warner and one factor favored Plaintiffs. So it was error for the district court to conclude that the magistrate judge had failed to apply *Howe*. Although the magistrate judge did not explicitly mention *Howe* as it analyzed each factor, it did not need to. It was enough that the judge considered *Howe*'s factors in evaluating the evidence.

*The District Court's Standard of Review.* The district court's previous error gave way to its next error: reconsidering the magistrate judge's harmlessness determination de novo.[9] In analyzing the *Howe* factors anew, the district court found that four of *Howe*'s factors favored Plaintiffs and only one factor favored Time Warner. It therefore sustained Plaintiffs' objections.

We already noted that the "clearly erroneous or contrary to law" standard of 28 U.S.C. § 636(b)(1)(A) requires district courts to review a magistrate judge's legal conclusions de novo and factual findings for clear error on certain pretrial matters. *See City of Long Branch*, 866 F.3d at 99. But a judge's determination of harmlessness under *Howe* is neither a pure legal conclusion nor a pure factual finding. *Howe* requires judges to *apply* facts to a legal standard, *i.e.*, its five-factor test. So it is best characterized as "a mixed question of law and fact." *Ornelas v. United States*, 517 U. S. 690, 696 (1996).

That said, we do not read § 636(b)(1)(A) as forcing district courts to choose between either the clear error or de novo standards without regard to the targets of their review. "Jural concepts are not limited to binary systems." *In re Hygrade Envelope Corp.*, 366 F.2d 584, 588 (2d Cir. 1966) (Friendly, J.). For mixed questions of law and fact, § 636(b)(1)(A) "invoke[s] a sliding scale of review" in which "clear error" and "contrary to law" represent the outer bounds. 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3069, at 393 n.20 (3d ed. 2014 & Supp. 2019). "The more fact-intensive the question, the more deferential the level of review. The more law intensive the question, the less deferential

---

[9]The district court did not use the words "de novo." But the court agreed with Plaintiffs' argument that the magistrate judge's decision was "contrary to law" for failing to apply *Howe*. (R. 181, D. Ct. Sanctions Order at PageID #5950.) And a "contrary to law" determination is essentially made de novo. *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d. Cir. 2017); *see also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3069, at 393–95 (3d ed. 2014). Moreover, it is clear from the district court's analysis that the court accorded no deference to the magistrate judge's decision. That was inevitable after the court erroneously concluded that the magistrate judge failed to apply *Howe*.

the review." *Id.* (citing *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 288 F. Supp. 3d 483, 486 (D. Mass. 2018), *vacated on other grounds*, 915 F.3d 1 (1st Cir. 2019)); *accord In re IDC Clambakes, Inc.*, 727 F.3d 58, 64 (1st Cir. 2013).

With this approach in mind, we hold that a district court should review a magistrate judge's determination of harmlessness under Rule 37(c)(1) for an abuse of discretion. *See* Charles Alan Wright et al., *supra*, § 3069, at 395. That standard, falling as it does somewhere in between the outer bounds of our "sliding scale of review," accommodates the mixed legal and factual nature of the *Howe* inquiry. Indeed, many district courts already review or effectively review such decisions by a magistrate judge for an abuse of discretion. *See, e.g.*, *Garrison v. Sam's E., Inc.*, No. 1:16-CV-00152-GNS-HBB, 2018 WL 4355824, at \*4 (W.D. Ky. Sept. 12, 2018); *Valador, Inc. v. HTC Corp.*, No. 1:16-CV-1162, 2017 WL 2999700, at \*1 (E.D. Va. Mar. 3, 2017); *Alvariza v. Home Depot*, 241 F.R.D. 663, 666 (D. Colo. 2007); *Proffit v. Veneman*, No. CIV.A. 5:01-CV-00067, 2002 WL 1758232, at \*2 (W.D. Va. July 15, 2002).**[10]** We thus conclude it was error for the district court to reconsider the magistrate judge's decision de novo.

*The District Court—Not the Magistrate Judge—Abused Its Discretion.* As discussed, the magistrate judge adequately considered at least four of the five *Howe* factors. And it appropriately found that Time Warner's disclosure was harmless considering that at least three of the five factors weighed in Time Warner's favor. So the district court had no basis to conclude that the magistrate judge abused its discretion. It was instead the district court that abused *its* discretion in (1) erroneously concluding that the magistrate judge failed to apply *Howe* and (2) reconsidering the magistrate judge's decision while applying the wrong standard of review. *See Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) ("A district court abuses its discretion when it . . . improperly applies the law[] or uses an erroneous legal standard.").

Because we have already ruled in Time Warner's favor on Plaintiffs' summary judgment appeal, we have no need to reverse the district court's exclusion of Plaintiffs' offer letters. But the court based its decision to order monetary sanctions entirely on its reasons for excluding the letters. And the court should have let the magistrate judge's decision stand, including the denial

---

**[10]**And, of course, when a court of appeals reviews a district court's application of Rule 37 in the first instance, it does so for abuse of discretion.

of Plaintiffs' request for monetary sanctions.  Therefore, we see no justification for the monetary sanctions that the district court imposed on Time Warner.**11**

For these reasons, we affirm the district court's grant of summary judgment to Time Warner.  And we reverse the court's award of attorneys' fees and costs to Plaintiffs.

---

**11**Because we reverse the district court's award of attorneys' fees and costs on this ground, we do not analyze Time Warner's alternative argument that the district court improperly failed to make a "bad faith" finding before imposing those fees and costs.